First degree rape; sentence: life imprisonment without parole.
The prosecutrix, a ten year old female, testified she was baby sitting for her younger brother and sister, in her mother's temporary absence, on February 8, 1981. About 2:00 a.m. the prosecutrix was awakened by a knock on the front door of her mother's house. She opened the door and saw a black male whom she had never seen before. He inquired as to whether her mother or mother's boyfriend were home, and upon receiving a negative answer, forced his way into the house. Although the living room light was not on, she was able to observe the man because of the illumination from the lights in the kitchen and bathroom and a television in the living room. The appellant took the prosecutrix into the bedroom where her brother and sister were sleeping. This room was illuminated by the light from a black and white television. Appellant removed his clothes and then at knife point forced the prosecutrix to remove her pants and panties. He put the prosecutrix in the bed and in two separate episodes penetrated her private part with his private part. Appellant told her that if she awakened her brother and sister he would kill her. After the second penetration, the appellant began fondling her private part. A horn blew, and appellant left stating he would return. The prosecutrix then ran to her aunt's neighboring house and reported the attack. Her mother arrived shortly and the prosecutrix was taken to the hospital.
The prosecutrix stated she was able to observe appellant's face during the entire thirty to forty minute episode. Several weeks later she picked appellant's picture out of a group of five photographs. She could not remember appellant's coloration. However she indicated the assailant's height to the jury and stated he was of medium build. She testified that she identified the appellant in the courtroom based upon her observation of him the night he attacked her.
Dr. Raymond McKnight testified he examined the prosecutrix at the Southeast Alabama Medical Center emergency room early on Sunday morning, February 8, 1981. He administered a standard rape examination and found evidence of very recent injury to the hymeneal ring, as well as the presence of what, in his opinion, appeared to be a large amount of semen in the vagina.
Charles F. Brooks, a crime laboratory analyst for the State, testified he tested a sex crime examination kit received in the prosecutrix' case. The samples analyzed indicated the presence of semen and intact specimens of spermatozoa.
The State rested at the close of Mr. Brook's testimony and appellant moved for a directed verdict. The State was then allowed to reopen its case and presented the testimony of Sergeant Harding Miley of the Dothan Police Department. Sergeant Miley testified he conducted the photographic array in which the prosecutrix picked out the appellant. He stated he did not mention appellant's name at that time nor did he tell her the man's photograph was in the array. The prosecutrix' recollection in her testimony, however, was that he had told *Page 5 
her the man was in the array, but had not indicated which man nor his name. Sergeant Miley testified it did not take her long to pick out appellant, and that she stated he was a man she would never forget.
Appellant testified on his own behalf, and denied assaulting the prosecutrix. He presented an alibi defense, and presented other testimony in support thereof.
 I
Appellant contends the evidence presented at trial was not sufficient to support a conviction of rape in the first degree. He specifically points to minor contradictions in the prosecutrix' testimony concerning the appellant's coloration, as well as the prosecutrix' initial failure to observe appellant seated in the courtroom and point him out as her assailant. We note that the prosecutrix made it ultimately very clear in her testimony that appellant was the man who attacked her, and that her identification was based upon her forty minute observation of him during the attack. She described his height and weight to the jury as well, and showed no hesitation in her identification of appellant as the man who assaulted her.
Although the record indicates some minor confusion on the part of the prosecutrix as to appellant's coloration, the record clearly supports a positive identification of the appellant and a prima facie case of rape which was sufficient to sustain the jury's verdict. Smelcher v. State, 385 So.2d 653
(Ala.Cr.App. 1980); Jackson v. State, 56 Ala. App. 597,324 So.2d 311 (1975). The question of identification was entirely a question of fact for the jury, and the evidence presented was sufficient to sustain their conclusion. Seals v. State,271 Ala. 142, 122 So.2d 513 (1960); Aaron v. State, 271 Ala. 70,122 So.2d 360 (1960).
 II
Appellant also questions the constitutionality of the Alabama Habitual Offender Statute, under which he was sentenced, as it was applied to him.
Appellant first contends the statute is an ex post facto law as applied to him because the prior conviction proceeded under by the State in applying the statute occurred prior to the passage of the Habitual Offender Statute. This argument is without merit. Smith v. State, 392 So.2d 1273 (Ala.Cr.App. 1980); Wilson v. State, 371 So.2d 932 (Ala.Cr.App. 1978) affirmed, 371 So.2d 943 (Ala. 1979).
Appellant also alleges the statute as applied to him is unconstitutional in that life without parole is cruel and unusual punishment in that the sentence is excessive in light of the underlying prior convictions. This argument also is without merit. Watson v. State, 392 So.2d 1274 (Ala.Cr.App. 1980), cert. denied, 392 So.2d 1280 (Ala. 1981); Thompson v.State, 405 So.2d 717 (Ala.Cr.App.), cert. denied, 405 So.2d 721
(1981).
This record is free of error. This case is therefore affirmed.
AFFIRMED.
All the Judges concur. *Page 714