462 So.2d 743 (1984)
Michael Wayne CLARK
v.
STATE of Alabama.
6 Div. 409.
Court of Criminal Appeals of Alabama.
August 28, 1984.
Rehearing Denied October 9, 1984.
Certiorari Denied February 1, 1985.
George W. Andrews III, Birmingham, for appellant.
Charles A. Graddick, Atty. Gen., and Thomas K. Brantley, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 84-109.
TYSON, Judge.
Michael Wayne Clark is charged in five separate indictments with committing the following offenses on the night of February 11, 1983. First degree rape, contrary to § 13A-6-61, Code of Alabama 1975 as amended; first degree sodomy, contrary to § 13A-6-63, Code of Alabama 1975; first degree kidnapping, contrary to § 13A-6-43, Code of Alabama 1975; first degree robbery, contrary to § 13A-8-41, Code of Alabama 1975 and first degree burglary, contrary to § 13A-7-5, Code of Alabama 1975. The jury found the appellant guilty of each of the above five offenses finding, however, that the appellant was "guilty of `kidnapping in the second degree' but of the first degree charged as to the other four offenses." Following a sentencing hearing at which the appellant was determined *744 to be a habitual offender, the trial court sentenced the appellant to life imprisonment in each of the five offenses and directed that such sentences be served concurrently.
Janice A., the prosecutrix, testified that she lived with her husband at 3431 Exeter Avenue in Bessemer on the night of February 11, 1983. Her husband had left with two men shortly before 10 o'clock that evening. About thirty minutes later there was a knock on the door and her six year old daughter answered same. She stated that she recognized immediately the appellant as he had been by her home twice during that same week and talked to her husband. She also stated that she had known the appellant for approximately 16 years before the night in question. She made a positive in-court identification of the appellant.
Succinctly stated, the following occurred. The appellant forced his way into her apartment home at pistol point and demanded of her "Bitch, where's the money? " She stated that he then went rambling through the drawers in her chest of drawers; that her three little girls, all of whom were under the age of six, were crying and that the appellant had a woman's stocking over his face. The appellant stated to her, "Bitch, I don't give a damn, I kill you and your children both." He then finally dragged her from the apartment at pistol point, by the arm, and took from her $4.00 which was in her bra and a gold quartz watch. She stated that she was only dressed with red pants and a beige shirt in addition to underclothes and house shoes. Appellant then took her to an old house which was being rebuilt about a block and a half from her home. At pistol point, he then forced her to strip and perform oral sex. She stated she gagged and threw up, but that he required that she do this three times.
The appellant then required her to remove all of her clothing, which he forced her to do at pistol point, and had sexual intercourse with her three times. He then kept the watch and money before turning her loose and letting her return to her home. She came in crying, with part of her pants torn, and made complaints to her husband who returned shortly after she did. Her husband then left to see the appellant.
The prosecutrix testified that it was only after her husband returned to the house that they then telephoned the police and that she was taken to the hospital for examination. She testified that she had not had sex with her husband for some several days prior to the night of the incident. She stated she gave the police a detailed report of the incident and that it was necessary for her to return to the hospital about a week later to be treated for injuries to her vagina.
The appellant's husband testified that he had left the home to go to a card game with two friends around ten o'clock that evening. His wife was home with three daughters when he left. He stated that he returned about an hour and a half later and that, when he came in, she was crying and her clothes were torn. He stated that after talking with her he went to his mother's home and grabbed a rifle and then went looking for appellant. He stated that he did not find the appellant at first but that later he went to the appellant's house and told him that he wanted him to come with him to find out if what his wife said was true. He said the appellant refused to leave his own home. The husband then returned to his home and called the police and took his wife to the hospital for treatment.
Jefferson County Sheriff Sergeant John B. Davis testified that he went to the home of the prosecutrix on the night of February 12, 1983 and arrived there sometime after midnight. He stated that the prosecutrix told him that the appellant had put a gun to her head and threatened to blow her head off and had even pulled the trigger but that the gun did not fire. She stated that in an old vacant house he forced her to perform oral sex three times and then had sexual intercourse with her three times. He stated that he then went to the scene *745 and found a chewing gum wrapper and evidence of human vomit.
He then went to the home of the appellant and recovered a pistol from underneath the mattress in the bedroom where the appellant's mother stayed and he found that there were two bullets in the gun which had "dented primers". He stated that these rounds were live, but were old. Some items of clothing were turned over to him which were taken to the Department of Forensic Sciences for examination along with a pistol which he recovered. These items were confirmed by Evidence Sergeant George Knight of the Jefferson County Sheriff's Department.
Sandy Whitsitt testified that he was employed in a store known as "The Pantry" in Bessemer in February, 1983. He stated that he learned of the incident involving the prosecutrix from her husband. Whitsitt testified that he saw the appellant, Michael Clark, in the store between 8:30 and 9:00 o'clock on the evening of February 11, 1983. He stated that the appellant was wearing a skull cap, a black leather jacket, blue jeans and white tennis shoes. He stated that under the skull cap was a stocking cap which had been cut off. He stated that he knew the husband of the prosecutrix and remembered the clothing worn by the appellant on the night in question. Whitsitt also testified that the District Attorney and the prosecutrix's husband had come to the store where he was employed on the date of his testimony at trial and that he told them of seeing the appellant in the store on the night of the incident and as to the clothing the appellant was wearing.
The medical records reflecting the treatment on the prosecutrix were then stipulated into evidence.
The appellant's motion for a judgment of acquittal was then overruled by the trial court.
The appellant presented the testimony of Edwin Mack, Felix Belcher and Earnest Moorer, all of whom testified as to seeing the appellant on the night in question, February 11, 1983, at the Dartmouth Lounge and of talking with him and having a drink with him during the approximate time in which the incident in question allegedly took place.
Belcher testified the appellant was wearing a different type of clothing of that previously testified to by the prosecutrix.
Moorer testified that he left the club around 11:00 o'clock that evening with the appellant and saw him walk out to a car.
The appellant's brother, Freddie Clark, testified that he was a student at Lawson State College. He testified that he had been at his girl friend's home and later return to his own home and watched television. He saw the appellant come in about 11:15 p.m. and then go to bed. Freddie testified that sometime around midnight or shortly thereafter, the prosecutrix's husband came by and knocked on the door and said he wanted the appellant to come go with him. He stated that the prosecutrix's husband asked, "Why don't you come go with me where I can see did my wife say it was you." He stated that the police arrived in the early hours of the morning and made an arrest.
Ruth Mae Clark, the appellant's mother, testified that she saw the appellant at home earlier on the evening of February 11, 1983, but that he left shortly before 10:00 o'clock that night. She stated that she had a pistol which she kept under her mattress in her home and that the next morning when the police came by she gave them the pistol. She stated that the appellant did not own a black leather jacket.
After the close of all of the evidence the appellant renewed his motion for a judgment of acquittal which was denied. The appellant also requested the affirmative charge with hypothesis as to each of the five indictments and this was denied.

I
The appellant first contends that the State failed to prove a prima facie case as to each of the indictments against him. The evidence against the appellant with reference to the charge of first degree rape *746 is amply borne out through the testimony of the victim which was properly corroborated through the testimony of the investigating officers and the medical records. Thus, the appellant's motions and requests for charges were properly denied on this basis. Harris v. State, 333 So.2d 871 (Ala. Crim.App.1976); Dozier v. State, 415 So.2d 3 (Ala.Crim.App.1982).
Similarly, the evidence amply supports the indictment for first degree sodomy. Horn v. State, 49 Ala.App. 489, 273 So.2d 249 (1973) and Rowe v. State, 421 So.2d 1352 (Ala.Crim.App.1982); Jackson v. State, 375 So.2d 558 (Ala.Crim.App.1979); Turbyfill v. State, 356 So.2d 775 (Ala.Crim. App.1978).
We have also examined the record with reference to the testimony concerning the charge of kidnapping. The jury brought in a verdict of "guilty of kidnapping in the second degree". This charge, likewise, is properly sustained by the evidence in this cause as testified to by the victim and as corroborated by the officers and her husband. See Crews v. State, 374 So.2d 436 (Ala.Crim.App.1979) and Gurley v. State [Ms. June 12, 1984], 4 Div. 266 (Ala.Crim.App.1984).
With reference to the charge of first degree robbery, the evidence showed that the cash on the person of the prosecutrix, together with her watch, was removed from her at pistol point. This fully sustains the indictment for first degree robbery in this cause. Cheatham v. State, 431 So.2d 1350 (Ala.Crim.App.1983); James v. State [Ms. June 12, 1984], 4 Div. 266 (Ala.Crim.App.1984).
We have also carefully examined this record and find that the evidence produced at trial fully sustains the charge of first degree burglary. Guyton v. State, 435 So.2d 239 (Ala.Crim.App.1983).

II
The appellant next contends that the Alabama Habitual Felony Offender Act is unconstitutional and that it was unconstitutional to apply it to this appellant retroactively.
This court has passed upon these allegations several times in past years. We upheld the constitutionality of this act in Watson v. State, 392 So.2d 1274 (Ala.Crim.App. 1980), cert. denied, 392 So.2d 1280 (Ala. 1981). See also Smith v. State, 392 So.2d 1273 (Ala.Crim.App.1980).
We have rejected the argument that this act is violative of the ex post facto provision of the United States Constitution in the following cases. James v. State, 405 So.2d 71 (Ala.Crim.App.1981); Seritt v. State, 401 So.2d 248 (Ala.Crim.App.1981), cert. denied, 401 So.2d 251 (Ala.1981); Smith v. State, 401 So.2d 251 (Ala.Crim. App.1981), cert. denied, 401 So.2d 257 (Ala. 1981); Dozier v. State, 415 So.2d 3 (Ala. Crim.App.1982). Also, Seritt v. Alabama, 731 F.2d 728, 735 (11th Cir.1984).

III
Finally, the appellant asserts that the following comment of the District Attorney during closing argument constituted impermissible argument, and on the basis of such, this cause should be reversed.
"If this Sandy Whitsitt was going to lieand I will say this, I went out there at lunch time and I found him because I found out there was a man who knew something about this man named Sandy and he might could tell me something. And I went out there with Kenneth Andrews looking for him. And I found him.
"MR. TUCKER: I talked to him before I put him on the stand just like I talk with any witness. When I put someone on this witness stand as my witness I vouch for their credibility. Now, anybody can make a mistake on the stand. But, I vouch they are going to be a credible witness.
"MR. ANDREWS: Judge, I'm going to object to that.
"MR. TUCKER: That is the law of this state, Your Honor.
"THE COURT: State your objection.
"MR. ANDREWS: I object to him vouching for the credibility of the witness. He *747 is not personally vouching for the credibility of a witness.
"MR. TUCKER: I think the law says otherwise.
"THE COURT: Overruled.
"MR. ANDREWS: We except."
The appellant's counsel argues that Whitsett, the witness, was "an eleventh hour" witness and the District Attorney had "personally vouched for this witness' credibility", therefore, this cause should be reversed.
We do not put the same construction on the colloquy above quoted as appellant's counsel. In Johnson v. State, 272 Ala. 633, 133 So.2d 53 (1961), the Supreme Court of Alabama observed the following:
"It is sometimes difficult to draw the line between allowable argument and improper statements in argument. The rule is that an attorney cannot be allowed to state anything as a fact as to which there is no evidence. Olden v. State, 176 Ala. 6, 11, 58 So. 307. But the solicitor may properly comment upon the evil generally of the crime which the law he is seeking to enforce intends to prevent. Dollar v. State, 99 Ala. 236, 13 So. 575. It is only when the statement is of a substantive, outside factstated as a factand which manifestly bears on a material inquiry before the jury, that the court can interfere and arrest discussion. Cross v. State, 68 Ala. 476, 484; Sanders v. State, 260 Ala. 323, 70 So.2d 802. The remark of the solicitor did not fall within the ban of prejudicial argument but was merely arguendo of his opinion of the case and what the result of the jury verdict should be."
Similarly, this court, speaking through Judge Harris in Milton v. State, 417 So.2d 620 (Ala.Crim.App.1982) observed:
"Counsel for both the State and appellant are allowed wide latitude in drawing reasonable inferences from the evidence in their closing arguments. A prosecutor as well as defense counsel has a right to present his impressions from the evidence, if reasonable, and may argue every legitimate inference. Manigan v. State, Ala.Cr.App., 402 So.2d 1063, cert. denied, Ala., 402 So.2d 1072 (1981)."
. . . . .
The court noted also:
"Furthermore, the credibility of a witness is a legitimate subject of criticism and discussion. Flint v. State, Ala.Cr. App., 370 So.2d 332; Smith v. State, Ala.Cr.App. 344 So.2d 1239, cert. denied, 344 So.2d 1243 (Ala.1977)."
The U.S. Fifth Circuit in Powell v. Wiman, 287 F.2d 275 (1961) stated:
"In Alabama, `when a party places a witness on the stand, he thereby vouches for his credibility.'" (Citations omitted).
In the case at bar, the prosecutor was not personally vouching for the witness who had been called, but rather was arguing to the jury as to the effect of that witness' testimony. That is, that the witness gave an accurate account of the description of the clothing being worn by the appellant on the night in question. We see no error.
We have carefully examined this record, including all arguments advanced by counsel for appellant. This record is free of error. The judgment of the trial court is therefore due to be and the same is hereby affirmed.
AFFIRMED.
HARRIS and PATTERSON, JJ., concur.
BOWEN, P.J., concurs in result with opinion.
TAYLOR, J., joins in BOWEN opinion.
BOWEN, Presiding Judge, concurring in result.
I concur only in the result of the majority opinion. The prosecutor's comments go beyond the realm of reasonable forensic debate. The majority opinion is somewhat similar to the dissenting opinion of Judge Johnson in McGhee v. State, 41 Ala.App. *748 669, 671-73, 149 So.2d 1 (1962), which was rejected in McGhee v. State, 274 Ala. 373, 149 So.2d 5 (1963).
The objectionable portion of the prosecutor's arguments is:
"MR. TUCKER: I talked to him before I put him on the stand just like I talk with any witness. When I put someone on this witness stand as my witness I vouch for their credibility. Now, anybody can make a mistake on the stand. But, I vouch they are going to be a credible witness."
This is a flagrant violation of the rule.
"Generally, the authorities indicate that impropriety and prejudice may result just as readily from crediting one's own witness with truthfulness as from charging an opposition witness with faults. While counsel may properly argue as to the weight and sufficiency of the evidence and the credibility of witnesses from the evidence if he neither says nor insinuates that the statement is based on his own personal knowledge or anything else besides the witnesses' testimony at the trial, it is not proper for him to take the position of an unsworn witness as to credibility. Thus, statements by counsel arguing the witness' credibility from his official position or occupation, or counsel's personal acquaintance with the witness, usually for some stated duration of time, are quite regularly construed as reversible error, usually on the ground that such comment constitutes unsworn testimony by counsel." 75 Am.Jur.2d, Trial § 306 (1974).
Here, the prosecutor was arguing the witness's credibility based upon his own personal knowledgenot upon the witness's testimony at trial and the evidence before the jury.
While the prosecutor's infraction of the rule is obvious, I do not think it warrants a reversal of the conviction. Considering the weight of the evidence against this appellant, it is unlikely that the possible prejudice was instrumental in the jury's finding.