The appellant, Christine Cross, was indicted for murder, a violation of § 13A-6-2, Code of Alabama 1975. Following a jury trial, she was convicted and sentenced to twenty-five (25) years' imprisonment.
The State's evidence tended to show the following:
The 64-year-old appellant, Christine Cross, and the 70-year-old victim, Rube Gibson, had been having an "affair" for approximately 25 years. The victim's wife of over 50 years had known of this "affair" for some 15 or 20 years. Also, the deceased had been having an "affair" for several months with Ms. Francis Stewart.
The appellant, in August of 1986, telephoned Mr. Gibson's house and informed Mrs. Gibson that "if I can't get him, I will kill." The appellant, a few months later, telephoned Ms. Stewart and told her that *Page 157 
"if she couldn't have him, nobody else would. That she would kill him."
On December 21, 1986, a Sunday morning, the victim went to the appellant's house, where he was shot once in the chest by the appellant. He died from that shot. The appellant telephoned the Covington County Sheriff's Department and requested that a deputy be sent to her house. She told the dispatcher that "she had been run over by Rube Gibson as long as she was going to." Deputy Denny Merritt arrived at the scene at approximately 10:00 a.m. and noticed the victim's body "lying face down just inside the door." Deputy Merritt testified that he did not question the appellant, but that she made a voluntary or spontaneous statement to the effect that "she was tired of what had been going on; that she shot him; here is the gun." Deputy Merritt testified that the appellant seemed upset, but that she was neither crying nor incoherent. Also, Deputy Merritt testified that he did not observe any signs of a struggle and did not notice any marks or bruises on the appellant.
The appellant, on December 23, 1986, voluntarily went to the sheriff's office. She was given a Miranda warning; she signed a waiver of rights form and gave the following signed statement:
 "Sometime around twenty minutes to nine a.m. on Sunday morning I was at my house in Gantt, Alabama when Rube Gibson pulled up in my yard. He came on in the house and he started fussing and cussing me. He pushed me on the couch and I went and got my gun. My gun was on the dresser in the first bedroom on the right. I got it, came back into the living room. He was standing just inside the front door. He turned around and told me that he was going to get his gun and so I shot him before he could get out the door. I shot him one time. He went down, kind of on his all fours and then pushed out forward on his stomach and was lying face down on the floor. I then called the county jail and told them to sent me a deputy. That I was tired of him running over me. Then I called Betty Holloway and told her that I had shot Rube Gibson. For her to get Jerry Cross to me before the law got there. When Jerry got there he called the police department."
Lonnie Harden, a firearms expert with the Alabama Department of Forensic Sciences, testified that, in his opinion, when the bullet was fired, the muzzle of the gun was in direct contact with the jacket being worn by the victim.
The appellant, in her defense, testified that the victim was often abusive and committed acts of physical violence against her. She testified that on the day of the shooting, the victim came into her home and accused her of having an affair with another man. She testified that he began to pull her hair and choke her and then knocked her to the couch. At that point, she testified, Mr. Gibson told her that he was going out to get his gun and shoot her. She said she immediately got up and retrieved her pistol. As Mr. Gibson started out the door, she said, he turned and she shot him. She testified that the victim had threatened on previous occasions to kill her.
The appellant's son and sister testified in her defense. Both testified that the victim was verbally abusive and had physically abused the appellant in the past.
The appellant raises five issues on appeal.
 I
The appellant's first contention is that the trial court committed reversible error in overruling her objection to the introduction into evidence of her oral statement made to police immediately after the shooting. Specifically, she contends that the State failed to disclose this statement pursuant to A.R.Crim.P.Temp. 18.1(a)(2).
The record reflects that the appellant filed a discovery motion, asking the State to disclose the substance of any oral statements made by the appellant before or after her arrest. However, the record does not reflect that the trial court ever ruled on the motion. Therefore, this issue is not preserved for review. In Jackson v. State, 484 So.2d 1174, 1179 (Ala.Cr.App. 1985), we *Page 158 
held that when a defenfant does not obtain a ruling from the trial court on his motion for discovery, the issue is not preserved for review.
Review on appeal is limited to matters on which rulings are invoked at the trial level. Robinson v. State, 441 So.2d 1045,1048 (Ala.Cr.App. 1983).
Also, when Deputy Merritt testified as to the appellant's spontaneous oral statement made at the scene, the appellant objected: "I object to any statement, Your Honor." That objection is not sufficient to reverse, because the appellant stated no grounds for her objection.
An objection without specifying a single ground, such as "I object," "objection," or "we object," is not sufficient to place the trial court in error for overruling the objection.Lawrence v. State, 409 So.2d 987, 989 (Ala.Cr.App. 1982); Cookv. State, 384 So.2d 1158 (Ala.Cr.App.), cert. denied,384 So.2d 1161 (Ala. 1980).
Moreover, had this issue been preserved, any error would be harmless. The appellant's spontaneous oral statement was, in substance, the same as given to the law enforcement authorities in her written statement which was disclosed to defense counsel. Furthermore, she testified to the fact that she shot the victim with her pistol. In Romine v. State, 384 So.2d 1185
(Ala.Cr.App.), cert. denied, 384 So.2d 1188 (Ala. 1980), we held:
 "A defendant cannot complain of the admission of improper evidence where he himself testifies to the same facts. Yelton v. State, 294 Ala. 340, 342, 317 So.2d 331 (1974). Even though there may have been error in admitting an admission or confession, such error is cured or rendered harmless by the defendant's own testimony which is substantially in the language of the confession or admission." Id.
at 1188.
Therefore, for the reasons listed above, this issue is to be decided adversely to the appellant.
 II
The appellant's next contention is that the trial court committed reversible error in overruling her objection to the admission of the written statement given by her to the law enforcement authorities. Specifically, she argues that her statement was not knowingly, intelligently, or voluntarily made, because, she says, she was under the influence of prescription medication and under emotional distress.
The record reflects that the appellant's written statement was taken two days after the shooting and after she was released from a hospital. She was given a Miranda warning and she signed a waiver of rights form. The appellant gave her statement and signed the writing after reading it.
The hospital records, introduced by the appellant, indicate that she had medication prescribed for diabetes and for blood pressure. She was also given five milligrams of Valium. Also, the hospital records indicate that she was admitted to the hospital, on the day of the shooting, due to "extreme nervousness, crying spells, and shock." Ellen Williams, the hospital out-patient therapist, reported the appellant's mental status the day following her admission to be: "insight fair, judgment intact on this date, concentration fair, memory intact, oriented to time, place, person, and situation. . . ."
Outside of the argument by the appellant, the record reflects no evidence that the appellant made anything but an intelligent and voluntary statement. Her argument that Valium rendered her statement involuntary is without merit. In order for intoxication to render a confession inadmissible, it must be shown that the mind of the defendant was substantially impaired when the confession was made. Hubbard v. State, 500 So.2d 1204,1218 (Ala.Cr.App.), affirmed, 500 So.2d 1231 (Ala. 1986), cert. denied, 480 U.S. 940, 107 S.Ct. 1591, 94 L.Ed.2d 780 (1987). The testimony presented tended to prove that the appellant was coherent and that the statements which were made were voluntary. The voluntariness of an alleged confession is a question of law addressed to the trial court, whose ruling will not be *Page 159 
disturbed on appeal unless it appears to be contrary to the great weight of the evidence or is manifestly wrong. Moore v.State, 488 So.2d 27, 30 (Ala.Cr.App. 1986). Because there was no showing that the trial court abused its discretion when it allowed the statements to be entered into evidence, the decision of the trial court will be upheld. O'Dell v. State,482 So.2d 1341, 1344 (Ala.Cr.App. 1985).
 III
The appellant's third contention is that the trial court committed error in admitting the State's exhibits. Specifically, she contends that State exhibits 22, 23, 24, 25, and 28 were not correctly admitted because the correct chain of custody was not established.
The records reflect that State's exhibits 24 and 25, a shirt and a windbreaker taken from the victim during the autopsy, were admitted into evidence without objection by defense counsel. Later, defense counsel objected to the State reoffering these exhibits into evidence during the testimony of firearms expert Lonnie Hardin. However, it is clear that these exhibits had already been admitted without objection. Prejudicial error may not be predicated on admission of evidence which has been admitted without objection or a motion to exclude at some other stage of the trial. Bates v. State,484 So.2d 1206, 1208 (Ala.Cr.App. 1986). See also, Jelks v.State, 411 So.2d 844, 848 (Ala.Cr.App. 1981). Therefore, reversible error cannot be predicated on an objection to the same exhibits when they were "reoffered" by the prosecution unless there was an objection on a motion to exclude the evidence when it was admitted earlier in the trial.
State's exhibits 22, 23, and 28 dealt with bullets and bullet cartridge cases. The record reveals that the State clearly established the chain of custody of the gun and its contents from the initial recovery to their receipt by the firearms expert, Lonnie Hardin, during whose testimony they were admitted into evidence. Mr. Mark Day, an investigator with the Department of Forensic Sciences, testified that he took possession of the appellant's gun at the crime scene and that he received the bullet removed from the victim during the autopsy. Dr. Afredo Predes, the pathologist who performed the autopsy, testified that he removed the bullet and handed it to Mr. Day. Mr. Day also testified that he turned the gun and bullet over to Mr. David Thorne, a forensic laboratory analyst for the Department of Forensic Sciences. Mr. Thorne testified that he forwarded the evidence he received from Mr. Day to Mr. Lonnie Hardin. In examining the record, we find that a complete chain of custody was established by the State and, therefore, that the bullet and the gun which caused the death of the victim were correctly admitted into evidence. Trahan v. State,450 So.2d 1102, 1109 (Ala.Cr.App. 1984); Williams v. State,375 So.2d 1257 (Ala.Cr.App.), cert. denied, 375 So.2d 1271 (Ala. 1979). The establishment of a chain of custody is needed to show a reasonable probability that evidence has not been tampered with or altered. Sommer v. State, 489 So.2d 643, 645
(Ala.Cr.App. 1986). It is well settled that the chain of custody need not be proved to an absolute certainty; a reasonable probability is sufficient. Smith v. State,513 So.2d 1036, 1043 (Ala.Cr.App. 1987).
We find that sufficient evidence was presented to prove that the evidence had not been tampered with or altered. Thus, we conclude that the trial court did not err in admitting the evidence.
 IV
The appellant's fourth contention is that the trial court erred in overruling her objection to the district attorney's comment during closing arguments. Specifically, she contends that the district attorney vouched for the credibility of the State's witness, Denny Merritt, and that his doing so amounted to the district attorney's injecting her own personal beliefs into her closing argument.
The appellant's son, Jerry Cross, testified in her defense. He testified that he had been asked by the law enforcement authorities to give a statement when he went with *Page 160 
his mother to the sheriff's department, but that his rights were not read to him until after he had given his statement.
The State, on rebuttal, recalled Deputy Denny Merritt, who testified that he read Jerry Cross a Miranda warning before he gave his statement.
The district attorney, in her closing argument, stated in pertinent part:
 "There wasn't anything that he [Jerry Cross] had to lie about, but he lied. He lied about Denny Merritt. He said, I gave a statement and then he read my rights. Why lie about it? Denny Merritt is a good officer and he doesn't go in and take statements and then read them their rights."
The test of a legitimate argument is that whatever is based on facts in evidence is within the scope of proper comment in argument to the jury. Ward v. State, 440 So.2d 1227, 1230
(Ala.Cr.App. 1983). Counsel for both the State and the defendant are allowed wide latitude in drawing reasonable inferences from the evidence in their closing arguments. A prosecutor, as well as defense counsel, has a right to present her impression from the evidence, if reasonable, and may argue every legitimate inference. Manigan v. State, 402 So.2d 1063,1072 (Ala.Cr.App.), cert. denied, 402 So.2d 1072 (Ala. 1981). A prosecutor may express her opinion concerning reasonable inferences, deductions, and conclusions to be drawn from the facts in evidence, as long as she does not express an opinion as to the defendant's guilt. Sams v. State, 506 So.2d 1027,1029 (Ala.Cr.App. 1986).
Clearly, the prosecutor's comments in closing arguments were based upon facts in evidence. The record reflects that the testimony of Jerry Cross, the appellant's son and defense witness, and that of Deputy Denny Merritt, the State's witness, was in conflict. However, the testimony was in evidence and the prosecutor could comment on this, since her comments were supported by the evidence. Moreover, the credibility of a witness is a legitimate subject of comment during closing arguments. In Milton v. State, 417 So.2d 620 (Ala.Cr.App. 1982), the prosecution called the appellant's witness a "blatant liar"; we held that the prosecutor's argument or comment was within the scope and limit of argument, because the argument went to the credibility of the witness. 417 So.2d at 623. In Clark v. State, 462 So.2d 743, 747 (Ala.Cr.App. 1984), we held that when a party places a witness on the stand, he vouches for his credibility, but does not personally vouch for the witness. In the case at bar, the prosecutor was arguing to the jury as to the effect of the witness's testimony, but was not personally vouching for Deputy Merritt's credibility.
Therefore, the trial court did not err in allowing the prosecution to attack the credibility of the appellant's witness, nor did the prosecutor personally vouch for the credibility of the State's witness. Thus, no error occurred.
 V
The appellant's final contention is that the trial court committed reversible error in its comments on its charge to the jury once the case had been submitted to the jury. Specifically, she contends that the trial court's supplemental charge was highly prejudicial and injected into the jury's mind an impression that the appellant was guilty.
The trial court dismissed the jury to commence their deliberations at 10:10 a.m., and the jury was seated back in the box at 11:30 a.m. The record reflects the following:
 "THE COURT: The bailiff has reported that you haven't reached a verdict yet and it is getting close to lunch hour. Suppose we go to lunch at this time. Let me caution you do not discuss this among yourselves, do not permit anyone to discuss it with you. When you have had your lunch and come back, do not start deliberating until all twelve of you are back in the jury room. And would 1:00 be convenient time for y'all to be back in the jury room? You can't be back by one? I mean I saw one juror shaking their head. *Page 161 
"JUROR: Oh, I can be back at any time.
 "THE COURT: Y'all to go lunch and reassemble in the jury room at 1:00. And with the shaking of the head it might have indicated that may be or thought there might be a little bit crossed up. But let me at this time say this to you; I don't want anybody to compromise an honest conviction. But some jury some day is going to have to reach a verdict on this. We are not ever going to get one that is more intelligent than y'all are and the next one might not be as good looking as some of y'all, but still it has got to be decided. I wouldn't want anybody to compromise an honest conviction but think about it and reason together and see if you cannot reach a verdict on this case when you come back. So go to lunch and come back. And we'll ask the spectators to remain seated until the jury clears the courtroom, please.
"(Jury was recessed at 11:35.)
 "MS. PERSONS: We object to the Judge's last instructions to the jury.
"Whereupon court was recessed at 11:37 a.m.)
 (The jury recommenced their deliberations at 1:00 p.m.)
 (Whereupon a jury returned in open court with a verdict at 1:52 p.m.)
 "THE COURT: Have you reached a verdict, Mr. Compton?
"MR. COMPTON: Yes, sir.
 "THE COURT: Would you hand it to the bailiff please, sir?
"(handed it to the bailiff and then to the court)
 "THE COURT: 'We, the jury, find the defendant guilty as charged. Earnest C. Compton, foreman.' Is that your verdict, ladies and gentlemen?
"(whereupon the jury indicated in the affirmative)
"THE COURT: Would you like to poll the jury?
"MR. PERSONS: No, Your Honor."
The appellant, on appeal, objects to the trial court's "compromise an honest conviction" language used during the supplemental charge. However, the record reflects that the appellant made only a general objection to the charge, with no grounds assigned.
To preserve alleged error in the trial court's oral instructions to the jury, objections must be specific enough to point out the alleged error so as to allow the trial court to correct the error. Ex parte Washington, 448 So.2d 404, 406
(Ala. 1984); Crumpton v. State, 402 So.2d 1081 (Ala.Cr.App.), cert. denied, 402 So.2d 1088 (Ala. 1981). A general objection which specifies no grounds preserves nothing for our review.Meadows v. State, 473 So.2d 582, 587 (Ala.Cr.App. 1985); Hughesv. State, 412 So.2d 296 (Ala.Cr.App. 1982). Therefore, this issue was not preserved for appellate review.
Even if this issue had been preserved for our review, it would still be decided adversely to appellant. No error is committed in including an "Allen" charge in a supplemental instruction unless the language used in it is threatening or coercive. Wiggins v. State, 429 So.2d 666, 669 (Ala.Cr.App. 1983). Moreover, it "is not error for the trial court to call the jury's attention to the time and expense a new trial would entail." Id., citing Poellnitz v. State, 48 Ala. App. 196,263 So.2d 181 (1972); Watson v. State, 398 So.2d 320 (Ala.Cr.App. 1980), cert. denied, 398 So.2d 332 (Ala.), cert. denied,452 U.S. 941, 101 S.Ct. 3085, 69 L.Ed.2d 955 (1981); Galloway v.State, 416 So.2d 1103 (Ala.Cr.App. 1982).
Here, the trial court's instructions were in no way threatening or coercive. The trial judge was simply reminding the jurors of their duty and urging them not to compromise their verdict by discussing the case while at lunch. Clearly, the jury was not threatened or coerced into reaching a verdict by this instruction. Thus, no error occurred.
AFFIRMED.
All the Judges concur. *Page 162