Hamid Sattari and Mary Gibson Sattari were convicted by a jury of arson in the first degree, in violation of § 13A-7-41, Code of Alabama 1975. Hamid Sattari was sentenced to a 15-year split sentence, requiring him to serve 3 years' imprisonment followed by 5 years' probation. Mary Gibson Sattari received a split sentence of 12 years, requiring her to serve 2 years' imprisonment followed by 5 years' probation. Both appellants were also fined $1000 each and ordered to pay restitution, jointly, in *Page 536 
the amount of $286,663.75, each being held jointly and severally liable for the amount of restitution imposed.
Briefly, the State's evidence showed that, on December 4, 1988, around 5:15 p.m., just minutes before the PIP Printing business was found engulfed in flames, both appellants were seen entering the front door of the business with a single key. Mr. Sattari was seen by two witnesses carrying, into the building, a flashlight and a "square looking object" which "clanged" against the cement sidewalk "like a metal can" when he placed the object on the ground to open the front door of PIP Printing. Mr. Sattari entered the store, leaving the key engaged in the unlocked door. Witnesses saw Mr. Sattari move, in the building, to the right side of the store, back to the left, and then towards the rear of the store. Mrs. Sattari was then seen entering the store, carrying what appeared to be a rolled-up newspaper. No one else was seen entering the store.
Around 5:26 p.m., Jonathan Gifford, owner of Gif's Grillout Restaurant, located next door to PIP Printing, went to the back of the restaurant, to the office, and noticed the odor of gasoline fumes. The fumes soon could be detected throughout the entire restaurant. Gifford was unable to locate the source of the fumes. A few moments later, a "massive explosion" shook the walls of the building and caused debris to fall from the ceiling of Gifford's business. Gifford immediately went to the front of the restaurant and telephoned emergency 911. As Gifford was on the telephone reporting the incident, he observed someone get into a cream-colored Chevrolet Camaro automobile parked in front of the PIP Printing business, with the engine running and someone else sitting in the vehicle. After about 30 seconds, Gifford saw Mr. Sattari exit the vehicle, "jumping and hollering, and asking what had happened?" Gifford told him that there was a fire and then "ran" back into the restaurant to retrieve some valuables. Upon returning, Gifford ordered Mr. Sattari to open the front door of PIP Printing so that they could attempt to extinguish the fire. Mr. Sattari explained to Gifford that he did not have a business key with him. At some point, the cream-colored Chevrolet Camaro left the scene. Subsequently, it was discovered that the Sattaris owned a vehicle matching this description.
The fire department arrived within three minutes of the call and eventually extinguished the fire, but the fire destroyed the Sattaris' business as well as Gifford's restaurant and damaged several other businesses in the LeCroy Shopping Center. According to the fire investigators, the fire was the result of arson through the use of flammable liquids. The State also presented evidence that appellants' business was insured against fire loss in an amount of $250,000, lost profits, and other items.
Appellants testified in their own behalf. They admitted being in their business establishment shortly before the explosion and fire, but they stated that they had left and were getting into their automobile in the parking lot when the explosion occurred. In substance, they denied any knowledge of how the fire occurred. Numerous character witnesses were called in their behalf.
Appellants contend that the trial court committed reversible error in overruling objections to several comments by the prosecutor during her opening statement and closing arguments. They also contend that the court erred in failing to control inflammatory remarks made by the prosecutor, which they urge deprived them of their constitutional right to a fair trial. They argue that her behavior was so egregrious as to require reversal.
Appellants' first claim of prosecutorial misconduct concerns the following statements made during the State's closing argument:
 "MS. BROOKS [Prosecutor]: . . . and they want you to say not guilty because of the nature of the crime. That's like saying Raymond Eugene Brown who butchered somebody to death is not guilty —
 "MR. BEASLEY [Defense Counsel]: Your Honor, I am going to object to that. That is highly improper. *Page 537 
 "THE COURT: Ladies and gentlemen, I have reminded you all several times that it's going to be up to you to determine the facts. I'm going to allow the attorneys to argue the facts.
 "MR. BEASLEY: Your Honor, may I approach the bench?
"THE COURT: You may.
 "(Whereupon, a bench conference was held out of the realm of the jury.)
 "MR. BEASLEY: Ellen Brooks just made a statement about a murder case that is a crime that everybody in this courthouse knows who Raymond Eugene Brown is, and he is a crook.
"MS. BROOKS: Everybody knows about the Bible, too.
 "THE COURT: I'm going to allow you to argue the case. I overrule your objection.
"(Whereupon, the bench conference was concluded.)"
The attorney general argues that the trial court's overruling of appellants' objection to the prosecutor's comment about Raymond Eugene Brown is not properly preserved for appellate review.
The attorney general relies on Cross v. State, 536 So.2d 155
(Ala.Cr.App. 1988), claiming that appellants' counsel's response of "highly improper" is not a specific objection. The Cross
court stated that such expressions as "I object" or "we object" or "objection" are not sufficient to constitute the "specific objection" necessary to place the trial court in error for overruling an objection. Id. at 158. Although, generally, an objection that does not specify a ground preserves nothing for review, Hughes v. State, 412 So.2d 296, 298 (Ala.Cr.App. 1982), if the ground is so obvious, Lawrence v. State, 409 So.2d 987,989 (Ala.Cr.App. 1982), or if the objected-to matter is clearly not proper for any purpose, McGinnis v. State, 382 So.2d 605,607 (Ala.Cr.App. 1979) cert. denied, 382 So.2d 609 (Ala. 1980), then the failure of the trial court to act may constitute prejudicial error. Here, appellants' counsel immediately objected to the prosecutor's remark regarding an unrelated crime. Appellants' counsel stated, to the trial court, that the remark was "highly improper" and then specifically stated enough argument that the trial court understood or should have understood the nature of appellants' objection when it ruled. The ground was quite obvious and the comment was clearly not proper for any purpose. Based on the record before us, we find that appellants' objection was timely, their ground for objection was specifically stated, and the trial court's adverse ruling sufficiently preserved the ruling for our review.
The attorney general also alleges that the prosecutor's comment was "merely trivial and insignificant when considered in light of the facts of [appellants'] case. Especially, in light of the fact that there is no indication that the members of the jury even knew who 'Raymond Eugene Brown' was or what he did." Although we agree that there is no indication in the record that any jurors "knew" of the Brown case, we are also mindful of the fact that the record reveals no indication that the members of the jury did not know about the Brown case.
The comment by the prosecutor, without any question, crossed the line of permissible conduct established by the ethical rules of the legal profession. ABA Standards for CriminalJustice 3-5.8(B) (2d ed. 1980). Her behavior is particularly egregious and perhaps even reprehensible. Not only was the prosecutor's comment totally irrelevant to the issues before the trial court, but the prosecutor's comparison of appellants, who are on trial for the charge of arson in the first degree, to a capital murderer is a completely unwarranted and disproportionate analogy. We find this comment to be particularly disturbing, since this court recently reversed and remanded Raymond Eugene Brown's conviction on an issue involving the widespread publicity the case received in the Montgomery County area. Brown v. State, 571 So.2d 345
(Ala.Cr.App. 1990). In Brown, this court found that, at the time of the trial, "at least 63% of the jury venire was exposed to [pre-trial] publicity." The Brown case was tried on March 27, 1988, while appellants' trial commenced on March 23, 1989, one year later, *Page 538 
in the same Montgomery County courthouse.
The use of such tactics by representatives of the State can seriously affect the fairness, integrity, and public reputation of judicial proceedings. This type of rhetoric by prosecutors has "no place in the administration of justice and should neither be permitted nor rewarded." United States v. Young,470 U.S. 1, 26, 105 S.Ct. 1038, 1052, 84 L.Ed.2d 1 (1985). Such behavior deserves "stern and unqualified judicial condemnation." Id. at 28, 105 S.Ct. at 1052.
However, the court, by overruling the objections of defense counsel, indicated its approval of the comment. See Davis v.State, 494 So.2d 851, 856 (Ala.Cr.App. 1986). The trial court's ruling further compounded the error. Because of the narrow time span between the Brown trial and the instant one, the trial court would have exercised better discretion by inquiring whether any jurors possessed at least some familiarity with Brown. See Holladay v. State, 549 So.2d 122, 126
(Ala.Cr.App. 1988), aff'd, 549 So.2d 135 (Ala.), cert. denied, ___ U.S. ___, 110 S.Ct. 575, 107 L.Ed.2d 569 (1989). Such an inquiry would have resolved any suggestion of improper influence over the jurors in regard to the prosecutor's remark that the guilt of appellants on the charge of arson is equal to the guilt of "Raymond Eugene Brown who butchered somebody to death." However, the trial court did nothing.
 "We emphasize that the trial court has the responsibility to maintain decorum in keeping with the nature of the proceedings; 'the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct.' Quercia v. United States, 289 U.S. 466, 469, 53 S.Ct. 698, 698, 77 L.Ed. 1321 (1933). The judge 'must meet situations as they arise and [be able] to cope with . . . the contingencies inherent in the adversary process.' Geders v. United States, [425 U.S. 80, 86, 96 S.Ct. 1330, 1334, 47 L.Ed.2d 592 (1976)]. Of course, 'hard blows' cannot be avoided in criminal trials; both the prosecutor and defense counsel must be kept within appropriate bounds. See Herring v. New York, 422 U.S. 853, 862, 95 S.Ct. 2550, 2555, 45 L.Ed.2d 593 (1975)."
United States v. Young, 470 U.S. at 10, 105 S.Ct. at 1043-44.
However, such impropriety does not always require reversal. Our harmless error rule, A.R.A.P. 45 provides:
 "No judgment may be reversed or set aside, nor new trial granted in any civil or criminal case on the ground of misdirection of the jury, the giving or refusal of special charges or the improper admission or rejection of evidence, nor for error as to any matter of pleading or procedure, unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties."
In Buchannon v. State, 554 So.2d 477, 480-81 (Ala.Cr.App. 1989), cert. denied, 554 So.2d 494 (Ala. 1989), overruled on other grounds, Ex parte State, 571 So.2d 333 (Ala. 1990), this court addressed the rationale of the rule:
 "[I]t is not the function of an appellate court to determine guilt or innocence or to speculate on the probable outcome of a retrial:
 " 'But this does not mean that the appellate court can escape altogether taking account of the outcome. To weigh the error's effect against the entire setting of the record without relation to the verdict or judgment would be almost to work in a vacuum. In criminal causes that outcome is conviction. This is different, or may be, from guilt in fact. It is guilt in law, established by the judgment of laymen. And the question is, not were they right in their judgment, regardless of the error or its effect upon the verdict. It is rather what effect the error had or reasonably may be taken to have had upon the jury's decision. The crucial thing is the impact of the thing done wrong on the minds of other men, not on one's own, in the total setting. *Page 539 
 " 'This must take account of what the error meant to them, not singled out and standing alone, but in relation to all else that happened. And one must judge others' reactions not by his own, but with allowance for how others might react and not be regarded generally as acting without reason. This is the important difference, but one easy to ignore when the sense of guilt comes strongly from the record.
 " 'If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress. But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.'
 "Kotteakos v. United States, 328 U.S. 750, 764-65, 66 S.Ct. 1239, 1247-48, 90 L.Ed. 1557 . . . (1946) (emphasis added) (citations and footnotes omitted)."
See also Schaut v. State, 551 So.2d 1135, 1137
(Ala.Cr.App. 1989).
 "After an appellate court has found that either a constitutional or non-constitutional error occurred in the trial court, it may nevertheless affirm the conviction on the ground that the error was harmless. The purpose of the harmless error rule is to avoid 'setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial, since the reversal of a conviction entails substantial social cost.' [United States v. Mechanik, 475 U.S. 66, 72, 106 S.Ct. 938, 942-43, 89 L.Ed.2d 50 (1986)].
 "In the case of constitutional error, the Supreme Court has stated that the beneficiary of the error must prove beyond a reasonable doubt that the error did not contribute to the verdict. [Chapman v. California, 386 U.S. 18, 23, 87 S.Ct. 824, 827-28, 17 L.Ed.2d 705 (1967)]. For non-constitutional error, the circuits apply a similar test; some circuits ask whether it is highly probable that the error contributed to the verdict, while others determine whether it is more probable than not that the error materially altered the verdict. Certain factors have a tendency to increase the likelihood of an appellate court finding the error harmless, including overwhelming evidence indicating the defendant's guilt, [Clark v. Wood, 823 F.2d 1241, 1244-51 (8th Cir.), cert. denied, 484 U.S. 945, 108 S.Ct. 334, 98 L.Ed.2d 361
(1987)], curative measures taken at trial, and a defendant's stipulation."
Project: Criminal Procedures, 77 Geo.L.J. 1249, 1276-78 (1989) (footnotes omitted).
 "On appeal, a court will reverse a conviction based on prosecutorial misconduct at trial only if the misconduct prejudiced the defendant's substantive rights in the context of the entire trial. . . . A court will seldom reverse a conviction on the basis of prosecutorial misconduct if there is overwhelming evidence of the defendant's guilt, if the trial court offers curative instructions to the jury, or if the misconduct has little cumulative effect on the jury."
Id. at 1030-31 (footnotes omitted). See also United States v.Giry, 818 F.2d 120, 133-34 (1st Cir.), cert. denied,484 U.S. 855, 108 S.Ct. 162, 98 L.Ed.2d 116 (1987) (wherein the court ruled that, although it was improper for the prosecutor to use an analogy of Peter's denial of Christ to describe defendant's denial of criminal intent because it was an irrelevant and inflammatory appeal to the jurors' religious beliefs, it was harmless error due to unambiguous evidence of guilt); Robisonv. Maynard, 829 F.2d 1501, 1509 (10th Cir. 1987) (wherein the court ruled that the prosecutor's suggestion that the jury should "turn the coin" on the defendant and think of the victims every time the defense mentioned *Page 540 
the defendant was questionable, but reversal was not required because there was no reasonable chance that the outcome of the trial would have been different if the remark had not been made).
Our review of the record, in its entirety, reveals an overwhelming amount of circumstantial evidence supporting appellants' convictions. Although we view the prosecutor's comment as egregious, opprobrious, and condemnable, in light of the overwhelming evidence, the absolute absurdity of the analogy, and the sure probability that the jury used its common sense and disregarded the comment, we cannot say that the prosecutor's comment and the trial court's inaction so undermined the fairness of appellants' trial as to amount to a miscarriage of justice. Rather we find that, beyond a reasonable doubt, the comment did not influence the jury's decision; there is no likelihood that a new trial would change the result of the trial. In light of this conclusion, we will not reverse, for such would be solely for the impermissible purpose of deterrence of prosecutorial misconduct. SeeUnited States v. Hasting, 461 U.S. 499, 506, 103 S.Ct. 1974,1979, 76 L.Ed.2d 96 (1983) (wherein the Supreme Court held that the deterrence of prosecutorial misconduct is an inappropriate basis for reversal of a conviction when the prosecutor's remark on the defendant's failure to challenge the charges is not a flagrant violation of the defendant's rights and more narrowly tailored means to deter objectionable conduct are available).
We have also reviewed appellants' contentions regarding several other comments made by the prosecutor and find several of them to be procedurally barred from review and the remaining comments to be either "an invited response," or proper.
For the above stated reasons, the judgment of the circuit court is due to be, and is hereby, affirmed.
AFFIRMED.
All Judges concur.