[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 750 
The appellant, Maurice Jackson, was indicted and tried for the murder of his estranged wife, Olivia Shell, was convicted of murder as charged in the indictment, and was sentenced as a habitual offender with 10 prior felony convictions to imprisonment in the penitentiary for life without the possibility of parole. He appeals, assigning three grounds, which he contends require reversal of the judgment of conviction. The appellant does not question the sufficiency of the state's evidence to support his conviction. His defense consisted mainly of cross-examination of the state's witnesses in an effort to cast doubt upon their testimony. He did not testify. The evidence presented by the state to establish the appellant's guilt was overwhelming.
The state's evidence disclosed that the police were summoned to the victim's apartment by neighbors who heard her scream for help. Upon arriving, the police saw the appellant coming down the back stairs of the building from the victim's apartment and fleeing from the building. They pursued him and apprehended him a short distance from the apartment building. His hands, arms, and clothing were covered with blood. He was observed wiping the blood from his hands and arms with a pillowcase, which it was later determined had come from the victim's bedroom. Upon entering the victim's apartment, the police found her on the floor of her bedroom, suffering from multiple stab wounds to her face and neck. She later died as a result of those wounds. A broken, bloody butcher knife was found under her body. The blood on the appellant and his clothing when he was apprehended matched the blood type of the victim. The appellant's glasses were found on the victim's bed.
 I.
The appellant's first contention is that a remark made by the prosecutor in final rebuttal argument was an impermissible comment on the appellant's failure to testify.
In his closing argument to the jury, the prosecutor stated: "[MR. MAHON]: Now, he kept talking about the defendant's statement is hearsay. It is hearsay. It is what he heard him say. Now, if he had wanted to testify, that would be fine, but he did not." Defense counsel immediately stated, "May it please the Court, move this Court for a mistrial." The trial court immediately denied *Page 751 
the motion for a mistrial and instructed the jury as follows:
 "Overruled. Ladies and gentlemen, I'll charge you there is no responsibility or obligation on the defendant to testify. That is what is known as his Fifth Amendment rights.
 "The fact that he does not testify should not be considered by you in [any] way adversely to the defendant's rights. He has this right if he wishes to avail himself of this right, and the fact that he does not testify should not cause you to consider the evidence any differently than if he had.
 "That is the constitutional right that every person has that lives in the United States or that is tried for a case that is tried within the United States. So this is what is known as the Fifth Amendment right.
 "The fact that he did not testify should not cause you to consider the evidence any differently.
 "Are there any of you that could not consider the evidence any differently just because the defendant did not testify in this case? Any of you that cannot consider the evidence any different?
"(No response.)
 "THE COURT: All right. You may proceed. I sustain the objection to it.
 "MR. SHEFFIELD [defense counsel]: Yes, sir. And for the record, I would ask you to instruct the jury to disregard it.
 "THE COURT: Disregard that, ladies and gentlemen."
Shortly thereafter, in its oral charge, the trial court instructed the jury further, as follows:
 "Now, ladies and gentlemen, I further — I stated to you in summation at the time an objection was made and it is true, but I must reiterate it. The defendant has a right, a constitutional right not to take the witness stand and not to testify in this case or any other case. Every person charged with an offense has that right.
 "The fact that the defendant has not taken the witness stand should in no way cause you to consider the evidence any differently. There should be no inference of guilt or innocence [from] the fact that the defendant has not taken the witness stand.
 "The burden of proof remains on the state and that burden never shifts. The defendant is protected by what is known as a constitutional right of that presumption of innocence as I have previously described to you.
 "And that presumption of innocence follows him throughout the course of the trial until the evidence produced by the state convinces each of you jurors of his guilt beyond a reasonable doubt."
After the trial court's oral charge, and out of the presence of the jury, the appellant renewed his motion for a mistrial, and the trial court in denying it stated:
 "Well, I'm going to overrule the motion for mistrial and I note your exception to the Court's charge.
 "I felt like I was compelled to charge them on that. I never charge unless it's a written requested charge, but I felt compelled to charge on the defendant's right . . . not to testify or wish to because of counsel for the state's comment during summation.
". . . .
 "I wish it had not been said, but I think the instruction, based on what the Court observed by the jury, that they accepted the Court's instructions.
 "When I asked if any of them could not disregard that statement made to them by counsel about the defendant's failure to testify and consider the evidence as they have heard it and not consider the evidence any differently, the Court was satisfied from their response that they could do so. And based on that, I overruled the motion for mistrial.
 "So based on the Court's instruction to the jury and the jury's apparent ability to accept those instructions concerning the Court advising the jury that the fact that the defendant did not testify should not be considered adversely to him in this case, based on that, the Court does not grant the motion for a mistrial." *Page 752 
A defendant has the right not to take the witness stand and testify in his own behalf and, if he exercises that right, not to be the subject of comment by the prosecuting attorney.Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229,14 L.Ed.2d 106 (1965); Ex parte Purser, 607 So.2d 301 (Ala. 1992); Whittv. State, 370 So.2d 736 (Ala. 1979); Ex parte Wilson,571 So.2d 1251 (Ala. 1990); Hereford v. State, 608 So.2d 439 (Ala.Cr.App. 1992); U.S. Const., Amend. V, XIV; Ala. Const. 1901, Art. I, §6; Ala. Code 1975, § 12-21-220. Article 1, § 6, Const. 1901, provides that, in all criminal prosecutions, the accused "shall not be compelled to give evidence against himself." Section 12-21-220, in defining that right, provides: "On the trial of all . . . criminal proceedings, the person on trial shall, at his own request, but not otherwise, be a competent witness, and his failure to make such a request shall not create any presumption against him nor be the subject of comment by counsel."
Where there has been a direct comment on a defendant's failure to testify or an indirect comment with a close identification of the defendant as the person who did not become a witness and the trial court does not act promptly to cure the comment, the defendant's conviction must be reversed.Ex parte Purser. A reversal may be prevented if the trial court sustains an objection to the improper remark and promptly and appropriately instructs the jury as to the impropriety of the remark. Ex parte Wilson. "In giving a curative instruction on the defendant's right not to testify, the trial judge should read the statute [§ 12-21-220] and explain thoroughly and immediately to the jury that the defendant's failure to testify in his own behalf shall not create any presumption against him." Wilson, 571 So.2d at 1265. In determining whether the curative instructions have eradicated the prejudice caused by the improper remark, each case must be considered on its own facts and circumstances. Whitt v. State. The "type of remark, whether reply in kind or not, whether promptly objected to, and the appropriateness of the trial judge's instructions" shall be considered. Whitt, 370 So.2d at 739. The Alabama Supreme Court has suggested minimum requirements for curative instructions, as follows:
 " 'We suggest that, at a minimum, the trial judge must sustain the objection, and should then promptly and vigorously give appropriate instructions to the jury. Such instructions should include that such remarks are improper and to disregard them; that statements of counsel are not evidence; that under the law the defendant has the privilege to testify in his own behalf or not; that he cannot be compelled to testify against himself; and, that no presumption of guilt or inference of any kind should be drawn from his failure to testify. With appropriate instructions, we hold that the error of the prosecutor's remarks will be sufficiently vitiated so that such error is harmless beyond a reasonable doubt.'
 "A curative instruction in a situation of this type, to be of any value, must be given immediately after the harmful statement is made. Further, where there can be any reasonable doubt as to the particular statement in question, the statement should be explicitly identified to the jury so that it can know what must not be considered. Anything less can in no way cure the error."
Ex parte Wilson, 571 So.2d at 1265 (quoting Whitt, 370 So.2d at 739) (citations omitted; emphasis added).
In this case, the state contends that when the remark in question is examined in the context in which it was made, it becomes evident that it is not a direct reference to the appellant's failure to testify but a reply in kind to previous argument of defense counsel. The record shows that shortly after the appellant was apprehended he made an oral exculpatory statement to Sergeant B.E. Clanton, an investigator with the Birmingham Police Department, in which he denied killing the victim and gave an account and explanation of his conduct before and after the commission of the crime. The state did not call Sergeant Clanton as a witness and did not offer the statement into evidence; however, the appellant called Sergeant Clanton as a witness and questioned him about the statement. The trial court refused to *Page 753 
allow the contents of the statement into evidence because it was self-serving, but did allow defense counsel to elicit from Clanton the fact that the statement had been given, some facts surrounding the giving of the statement, and an account of actions taken by Clanton as a result of the statement. The following comments about the statement in closing argument by defense counsel obviously led to the questionable remark by the prosecutor:
 "MR. SHEFFIELD [defense counsel]: Sergeant Clanton had all of the accumulated information of the other officers in addition to some information that no other officer had.
 "MR. MAHON [prosecutor]: Object, may it please the Court.
 "THE COURT: Ladies and gentlemen, you are to consider the evidence that's been presented to you and from no other source.
 "(Whereupon, Mr. Sheffield continued his closing argument to the jury, during which the following occurred:)
 "MR. SHEFFIELD: I asked him did he interview or interrogate or question Mr. Jackson here, and he told you 'Yes, I questioned him on, I believe it was the 18th.' And I asked him 'Did Mr. Jackson request to have an attorney there before the interrogation?' and his response was 'No, he did not.'
 "And I asked him that after his interview with Mr. Jackson and after his talking with him and making out a written report, I asked him whether he had that in his file all of this time and yes, he does have it in his file all of this time. And the district attorney has a copy of it.
 "MR. MAHON: Your Honor, I expect the opportunity —
"MR. SHEFFIELD: Copy of his statement.
 "MR. MAHON: — to reply in kind and I'll put the Court on notice that I'm going to do that.
 "MR. SHEFFIELD: May it please the Court, if he starts to reply in kind, he needs to be particular as he has been throughout this case on what I say about that.
 "THE COURT: Anything that's said can be replied in kind."
 The prosecutor, during his closing rebuttal argument, stated:
 "He [Sergeant Clanton] didn't hear her go up the stairs. The witnesses did. Eyes and ears, that's what a witness is. Memory of what you see and what you hear. He collects information.
 "After [Sergeant Clanton] collected all the information in this case, he came over and signed a murder warrant for this man based on the information he collected. But he didn't see any of this.
 "Now, he [defense counsel] kept talking about the defendant's statement, but the defendant's statement is hearsay. It is hearsay. It is what [Sergeant Clanton] heard him say. Now, if [the appellant] had wanted to testify that would be fine, but he did not."
While the prosecutor may not have intended his comment that "Now, if he had wanted to testify, that would be fine, but he did not" to be a comment on the appellant's failure to testify, we are of the opinion that it was a direct comment on the appellant's failure to testify, and there is a distinct possibility that the jury understood it as such. The trial court obviously understood it as a comment on the failure of the appellant to take the stand.
Under the "reply in kind" doctrine, where counsel for one party permits counsel for the opposing party to make impermissible remarks to the jury without interposing an objection, the law implicitly reserves to the non-objecting party the right to reply in kind, although his argument could be equally as impermissible as the other's argument. Ex parteRutledge, 482 So.2d 1262 (Ala. 1984). It is a misapplication of the "reply in kind" doctrine to uphold an illegal argument as a of "reply in kind" where the initial argument to which the reply is addressed, is itself a legally permissible comment.Id.
The state's position that the questionable comment was permissible as a "reply in kind" is not supported by the record. Defense *Page 754 
counsel's argument to which the prosecutor's argument was allegedly addressed did not go beyond the legally admitted evidence and was thus a legal argument. Defense counsel confined his argument to matters surrounding the giving of the statement and did not comment on the details of the statement itself. Because defense counsel's argument was legally permissible, the state cannot justify its illegal argument as a "reply in kind." We find no merit to the state's contention that the questionable comment constituted "reply in kind." That doctrine simply does not apply in this case.
The state further contends that, even if the "reply in kind" doctrine does not apply and the comment of the prosecutor was erroneous, the error was rendered harmless by the prompt and appropriate curative instructions to the jury. Having found that the comment violated the appellant's rights under the United States and Alabama Constitutions and under § 12-21-220, we now turn to the question of whether the trial court's instructions cured this violation.
While the trial court did not specifically identify in its instruction to the jury the exact statement made by the prosecutor to which its curative instruction was directed, the motion for a mistrial by the appellant immediately following the objectionable comment and the trial court's immediate ruling and curative instructions sufficiently identified the objectionable comment for the jury. Under the circumstances, there could have been no reasonable doubt as to the particular comment being questioned. The trial court instructed the jury to disregard the comment, and in substance instructed it that under the law the appellant had the privilege not to testify in his own behalf, that he could not be compelled to testify against himself, and that no presumption of guilt or inference of any kind should be drawn from his failure to testify. On numerous occasions just prior to the objectionable comment, the trial court instructed the jury that the comment of counsel did not constitute evidence in the case.
Moreover, within a very short time after the trial court had given this curative instruction to the jury, obviously out of a sense of precaution it instructed the jury again in its oral charge as to the appellant's constitutional right to testify or not to testify. In reiterating its instructions, it specifically called the jury's attention to its previous instruction given during the prosecutor's final rebuttal argument. The court specifically instructed that there should be no inference of guilt drawn from the appellant's election not to take the stand. The trial court coupled this instruction with further instructions on the state's burden of proof and the presumption of the appellant's innocence. Finally, not only did the trial court give curative instructions, but it also polled the jury to make sure each juror could disregard the prosecutor's comment. The trial court's statement as to its belief that the jurors understood its instructions and accepted them is noteworthy. "The trial judge is in the best position to determine whether the prejudicial effects of an improper remark can be eradicated by instructions to the jury, and his determination should be accorded great deference." Hannah v.State, 518 So.2d 182, 185 (Ala.Cr.App. 1987).
The failure of the trial court to read § 12-21-220 to the jury and explain it to them as a part of its curative instruction suggested in Ex parte Wilson did not render the instruction so insufficient as to result in reversible error. All that is required is that the instruction encompass the substance of the statute and meet the minimum requirements prescribed by the Alabama Supreme Court. No set language is prescribed for the instruction. What is required is that any curative instruction embrace the requirements set out by the Alabama Supreme Court in Whitt and Wilson.
We hold in the instant case that the trial court's curative instruction was prompt and appropriate, and sufficient to vitiate the prosecutor's improper comment. See Whitt; Wilson.
We are of the opinion that, in view of the curative instruction, the prosecutor's impermissible comment could have in no way contributed to the appellant's conviction. The trial court's denial of the motion for a mistrial was therefore proper. *Page 755 
 II.
The appellant contends that the trial court committed reversible error by admitting into evidence portions of the testimony of Robin Moore and Susan Christianson, neighbors of the victim. They were allowed to testify for the state on direct examination to conversations they had had with the victim minutes before the victim's death. The issue was preserved for review by timely objections made when the testimony was offered. The relevant portion of Moore's testimony is as follows:
 "Q. [Prosecutor:] All right. Did you see Olivia again that same evening?
"A. Yes, sir.
"Q. Where were you?
"A. On the front porch.
"Q. Where was Olivia?
 "A. She had gotten out of her car and was starting up on the porch.
"A. Did you have an opportunity to look at her?
"A. Yes, sir.
 "Q. Did you notice anything unusual about how she appeared?
"A. She was very nervous and upset.
"Q. Did you have a conversation with her?
"A. Yes, sir.
". . . .
 "Q. Do you remember what you said to her and she said to you?
 "A. Yes, sir. She told me that her and Maurice had had a disagreement at a filling station and that he had — an officer had to escort him out of her car, that he had threatened to kill her.
"Q. Was anything else said between the two of you?
"A. No.
"Q. Did you stay there on the porch?
"A. Yes, sir.
"Q. Did Olivia stay there on the porch?
"A. For a few minutes.
"Q. At some point, did she leave the porch?
"A. Yes, sir.
 "Q. Did she say anything to you at that point as she got ready to leave the porch?
 "A. She started up the steps. She turned around and asked me if I would turn the lights on in the hall because it was dark.
". . . .
 "Q. Was anything said at the point she got up to go up the stairs?
 "A. She started up the steps, and she asked me if I [saw] Maurice to call the police, that she was scared. And I told her I would. I turned the lights on, and she went on up the stairs.
"Q. Where were you when she went up the steps?
"A. Standing on the porch.
 "Q. All right. Could you hear her as she went up the steps?
"A. Yes, sir.
 "Q. What happened next that you recall either hearing or seeing?
". . . .
 "A. I heard the keys when she stuck them in the door and then she hollered and she said, 'Robin, call the police, call them now, please.' "
The relevant portion of Christianson's testimony is as follows:
 "Q. [Prosecutor:] That evening, did you hear something unusual going on with respect to Olivia's apartment?
"A. Yes.
 "Q. Do you remember where you were when you first heard or saw something going on?
"A. Yes. I was in the hallway.
 "Q. And were you in the hallway downstairs or the hallway upstairs?
"A. Downstairs.
"Q. And do you recall what it was that you heard?
"A. She says, 'Call the police, he is here.'
 "Q. Did you participate in any conversation that took place before you heard that?
"A. Yes, I have.
 "Q. And I'm talking about immediately before you heard the things that you did?
"A. Yes. *Page 756 
"Q. Who was talking?
"A. Olivia was.
"Q. Who else was talking?
"A. Teresa and Robin.
"Q. Where did that take place?
"A. It was outside on the porch.
 "Q. Did you have an opportunity to see Olivia while that conversation was going on?
"A. Yes.
 "Q. Could you observe her demeanor or how she appeared?
"A. Yes.
"Q. How would you describe it?
"A. She was very frightened and scared.
". . . .
 "Q. Do you remember the substance of what was said immediately before she went up the stairs?
"A. Yes.
"Q. What was it?
 "A. She said, 'If you see my husband around the apartment or by my car, call the police.'
"Q. And what happened at that point?
 "A. Well, that when she went up to her apartment and she asked Robin to turn the light on because she was scared, so she turned the light on.
"Q. Who turned the light on?
"A. Robin Green [Moore].
"Q. Then what happened?
 "A. And she walked up the steps and that's when she hollered to 'Call the police, he's here.' And that's all I heard after that."
The appellant argues that the testimony of Moore and Christianson relating the declarations made by the victim shortly before her death was inadmissible hearsay. The state argues that the statements, although hearsay, were admissible as exceptions to the hearsay rule because they were spontaneous exclamations or part of the res gestae, and because they were declarations of fear.
 "Res gestae may broadly be defined as matter incidental to the main fact and explanatory thereof, and includes acts and words which are so closely connected therewith as to constitute a part of the transaction; such acts and words must be spontaneous and so related to the occurrence in question as reasonably to appear to be evoked and prompted thereby. In other words, the term 'res gestae' comprehends a situation which presents a startling or unusual occurrence sufficient to produce a spontaneous and instinctive reaction, during which interval certain statements are made under such circumstances as to show lack of forethought or deliberate design in the formulation of their content. Statements which conform to these requirements and which in some way elucidate, qualify, or characterize the act in question are admissible in evidence as an exception to the hearsay rule."
R. Williams, Williams' Alabama Evidence § 139 (1967) (footnotes omitted). "A person's statement directly asserting or circumstantially indicating the existence of an emotion in him such as love, hatred, fear, malice, mental pain or their opposites, is admissible under the present hearsay exception." C. Gamble, McElroy's Alabama Evidence § 262.01(11) (4th ed. 1991) (footnotes omitted).
We find that the following testimony of the witnesses Moore and Christianson relating to declarations of the victim was properly admitted into evidence because those declarations fall within the exception to the hearsay rule as spontaneous exclamations or part of the res gestae, and statements asserting or indicating fear:
 "She told me that her and Maurice had had a disagreement at a filling station and that he had — an officer had to escort him out of her car, that he had threatened to kill her."
 "She turned around and asked me if I would turn the lights on in the hall because it was dark."
 "[S]he asked me if I [saw] Maurice to call the police, that she was scared."
 "[S]he said, 'Robin, call the police, call them now, please.' "
 " '[I]f you see my husband around the apartment or by my car, call the police.' " *Page 757 
"[S]he hollered to 'Call the police, he's here.' "
In our opinion, the circumstances in this case clearly justify the conclusion that the statements of the victim were made under the stress of nervous excitement and fear and not from reflection, and were admissible as tending to prove the truth of the matter asserted. See Ex parte Whisenhant, 555 So.2d 235
(Ala. 1989), cert. denied, 496 U.S. 943, 110 S.Ct. 3230,110 L.Ed.2d 676 (1990); O'Cain v. State, 586 So.2d 34 (Ala.Cr.App. 1991); Davis v. State, 455 So.2d 213 (Ala.Cr.App. 1984); C. Gamble, supra, at §§ 262.01(11), 265.01.
 III.
The appellant contends that the trial court abused its discretion by refusing to admit testimony of defense witness Officer William L. Brewer. Brewer testified on voir dire that sometime before to the murder but on the same day, Brewer responded to a disturbance call involving a black male and a black female at a Shell gasoline service station about two miles from the victim's residence. When he arrived, the incident was apparently over and the parties appeared calm. He asked the male to leave, and he promptly did. The female told him that the male kept snatching at her purse. She left in her automobile. She did not tell Brewer that the male had threatened to kill her. Brewer did not take the names of the parties and he could not identify them either before or after trial. He examined a photograph of the victim, but could not identify her as the female he had talked to at the service station. When asked if he recognized the appellant, he stated that he "did not recognize him as the person there that day." The appellant argues that Brewer's testimony should have been admitted to rebut Moore's testimony that the victim was nervous, upset, and scared, and to rebut the declarations of the victim that she was afraid of the appellant and that he had threatened her life. After the trial court heard the proffered testimony of Brewer out of the presence of the jury, it determined that it was not relevant because it was not sufficiently linked to the appellant and the victim.
The admissibility of evidence that has been challenged as irrelevant is within the discretion of the trial court, and its decision to admit or to exclude that evidence will not be overturned on appeal absent an abuse of that discretion.Primm v. State, 473 So.2d 1149 (Ala.Cr.App. 1985); C. Gamble, supra, at § 21.01(1) (1991). After considering the proffered testimony of Officer Brewer in the light of all the other evidence in the instant case, we cannot conclude that the trial court abused its discretion is not allowing the testimony. The incident at the service station was not clearly linked by evidence to the parties in this case, and we would have to resort to speculation to conclude otherwise. We find no merit in the appellant's contention.
However, assuming, arguendo, that the testimony of Officer Brewer was erroneously disallowed, we find, after examining all the evidence in the case, that the error, if any, was harmless, and did not injuriously affect the appellant's substantial rights. A.R.App.P. 45. We further conclude beyond a reasonable doubt that the error, if indeed it was an error, had no substantial influence on the outcome of the case, and did not contribute to the verdict of the jury. See Chapman v.California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967);Sattari v. State, 577 So.2d 535 (Ala.Cr.App. 1990), cert. denied, 577 So.2d 540 (Ala. 1991); A.R.App.P. 45.
For the above reasons, the judgment of the circuit court is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur. *Page 758