746 So.2d 1042 (1999)
Ex parte Larry D. DUNAWAY, Jr.
(In re Larry D. Dunaway, Jr. v. State of Alabama).
1980571.
Supreme Court of Alabama.
August 20, 1999.
Rehearing Denied October 22, 1999.
*1043 Paul W. Brunson, Jr., Clayton, for petitioner.
Bill Pryor, atty. gen., and Kathryn D. Anderson, asst. atty. gen., for respondent.
HOUSTON, Justice.
Larry D. Dunaway, Jr., was indicted on two counts of capital murder for the intentional killings of Tressa M. Patterson and James Anthony Bernard Patterson. The murder of Tressa Patterson was made capital because it occurred during the commission of arson in the first or second degree. See Ala.Code 1975, § 13A-5-40(a)(9). The murder of James Patterson was made capital because the victim was less than 14 years of age. See Ala.Code 1975, § 13A-5-40(a)(15). Dunaway was tried before a jury and was convicted of both capital offenses. During the sentencing phase of his trial, the jury recommended a sentence of death for the murder of James Patterson; it recommended a sentence of life imprisonment without parole for the murder of Tressa Patterson. The trial court followed the jury's recommendations and sentenced Dunaway to death by electrocution for the murder of James Patterson; it sentenced him to life imprisonment without parole for the murder of Tressa Patterson. The Court of Criminal Appeals affirmed Dunaway's convictions and sentences, and it overruled his application for rehearing. See Dunaway v. State, 746 So.2d 1021 (Ala.Crim.App. 1998), for a detailed statement of the relevant facts. This Court granted certiorari review, pursuant to Rule 39(c), Ala. R.App.P. We affirm.
Dunaway has presented a number of issues to this Court. Most of those issues were addressed, and correctly so, by the Court of Criminal Appeals in its opinion; we will not address those issues addressed by that court. However, two of the issues he presents here were not presented to the Court of Criminal Appeals. We will address those two issues: 1) Whether Dunaway is entitled to a new trial on the ground that the State improperly used its peremptory strikes to remove blacks from the venire, in violation of the holding in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986),[1] and 2) whether the admission of the testimony of Lois Russaw, Felicia Russaw, and Teresa Russaw during the sentencing phase of the trial constituted reversible error.
Because the trial court sentenced Dunaway to life imprisonment without parole for the murder of Tressa Patterson, we do not review the conviction for that *1044 crime under the same "plain error" standard that we use to review the conviction and the death sentence imposed for the murder of James Patterson. See Ex parte Woodall, 730 So.2d 652 (Ala.1998). In Woodall, this Court stated:
"Because the defendant in this case was sentenced to death, we have complied with our obligation under Rule 39(k) and conducted a plain-error review. However, with respect to his attempted murder conviction, for which he received a sentence of less than death, we do not believe the defendant is entitled to benefit from our plain-error review.... [T]he defendant's sentence of imprisonment for his conviction of attempted murder does not implicate the same heightened degree of concern for reliability that attended his sentence of death for the capital conviction. It is well established that where a defendant receives only a prison sentence the plain-error doctrine is not applicable and an appellate court will not consider an alleged error that the defendant failed to preserve by making a proper and timely objection in the trial court."
730 So.2d at 665. Given this Court's holding in Woodall, we will not, in reviewing the propriety of Dunaway's conviction and sentence for the murder of Tressa Patterson, consider any issue that was not raised in the trial court and in the Court of Criminal Appeals.
We will review Dunaway's conviction and sentence for the murder of James Patterson, however, under the plain-error rule. Under that rule, this Court, on certiorari review, will "notice any plain error or defect in the proceeding under review, whether or not brought to the attention of the trial court, and [will] take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial rights of the petitioner." Rule 39(k), Ala.R.App.P.; see, also, Ex parte Myers, 699 So.2d 1285, 1290 (Ala.1997). The defendant's failure to object at trial to an alleged error, while not precluding our review of that alleged error, will weigh against any claim of prejudice. Woodall, supra.
We note at this point that Dunaway did not present his Batson issue to the Court of Criminal Appeals; therefore, we will not consider it in our review of his conviction and life sentence for the murder of Tressa Patterson. We will consider it in our plain-error review of his conviction and the death sentence imposed for the murder of James Patterson.
Dunaway, who is black, argues the following in support of his Batson challenge:
"First, the state struck a large number (11) of African-American jurors. Second, it had to use a tremendous proportion of its 13 strikes85%to remove so many black people. Third, these black jurors included both men and women and ran the gamut on age, [this fact] suggesting that the leading characteristic they share was their race. Fourth, while the state struck only two white jurors, the defense eliminated sizable numbers of both white and black veniremembers. Fifth, the prosecutor did not engage in intensive voir dire with the black veniremembers eliminated. Sixth, the Barbour County District Attorney's office has been found in the past to have practiced racial discrimination in jury selection."
Although the trial court made no initial finding that Dunaway had established a prima facie case of racial discrimination, it nevertheless allowed the State to provide its reasons for the strikes:
"All right. In this case, the Dunaway case, y'all anticipate a Batson challenge.
"The State and the defense make notes about the strikes, the order of the strikes, the reason for the strikes. Now, I don't mind standing here, and if y'all want to give a race-neutral reason for each strike, that will probably eliminate a hearing on the Batson challenge because [the reason for the strike will have been given at the time of the strike]. *1045 And I'll do whatever you wish, but that is one option."
The State agreed to give its reasons for striking jurors as they were removed. The State then used its 13 peremptory strikes, stating throughout the process its reasons for removing black jurors:
Juror 75
"J.Y. did not respond to any questions, and I had seen him talking in the vicinity of some of the State's witnesses. And, his age. He is young, and he is about the age of the witnesses."
Juror 31
"Judge, this was an individual that responded to the questions very evasively. I had a lot of problems how she was judging the facts. She knew some facts about the case, and is one that the defendant suggested as a very good challenge for cause. She also had a son that had been convicted, a drug charge on the child."
Juror 20
"Judge, that is Ms. C. She is the one that had a complaint about having to see the doctor and being out for an extended period of time. She did not want to sit on a capital-murder case. I was very much concerned about her serving, and the state of her health in the responses."
Juror 55
"Judge, this was her mental capacity. She had a hard time understanding what was being said to her. She was one of the jurors that we questioned as to whether or not she would be able to return a verdict and serve at all. She also had a complaint about her eyes, and she couldn't read, you know, as she stated earlier before we had the individual voir dire."
Juror 54
"Your Honor, the defendant, his age, and he had not responded to many questions until we got into the 12 at a time, and then when Ms. L.G. was responding to a number of questions he was showing reaction to every question she responded to in a positive agreeing way toto every response that she had to her questions. He never, in fact, responded to any of the questions that I had. And it was certainly a response agreeing with every response that L.G. had in the series of 12 people."
Juror 48
"Judge, Mr. K. is a truck driver that didn't want to be here any of the time, and stated he would rather be anywhere else than here, and was very negative about serving on the jury at all. And that is number 48 that we strike."
Juror 56
"Number 56, I prosecuted him on a drug charge. I prosecuted a first cousin of his on a drug chargeof hers, I'm sorry. She is R.K."
Juror 78
"Judge, that was an individual that we had to go later and bring him in as a juror that didn't show up. And when I talked to the group he was very indecisive aboutwhat his statement would be about being on the case, and trying the case at all. His age, too, and it was very difficult for him to have been here in the first place. That is the reason we strike number 78."
Juror 21
"Judge, she has been represented by Don McKinnon [one of Dunaway's lawyers] in the past, and she was unresponsive when asked about being represented by Don in the past."
Juror 76
"He responded that it was very difficult for him to be on this case. He didn't want to serve on this case, and that is the reason we struck him."
Juror 12
"She said she had a difficult time reading. She is the one that was complaining about wanting to get off the jury."
Dunaway presented no rebuttal evidence indicating that the State's reasons were pretextual. When the jury was seated, *1046 one of Dunaway's attorneys announced Dunaway's satisfaction with the jury. The jury was composed of six white jurors and six black jurors.
It is within the sound discretion of the trial court to determine if peremptory challenges of jurors were motivated by intentional racial discrimination. The trial court's findings in this regard are afforded great deference and will not be disturbed on appeal absent clear error. See Ex parte McNair, 653 So.2d 353 (Ala.1994).
After thoroughly examining the record, we find no error on the trial court's part in accepting the State's reasons for its strikes. We find those reasons to be raceneutral; therefore, we hold that Dunaway is not entitled to a new trial on the basis of the rule stated in Batson. See Ex parte McNair and the cases cited therein, where we recognized 1) that striking a person who has been convicted of a crime, or the relative of a person who has been convicted of a crime, is racially neutral, and 2) that a juror's age, especially when coupled with a demeanor or attitude that indicates inattentiveness and a general inability or, perhaps, lack of desire to follow the trial may serve as a legitimate race-neutral reason for a peremptory strike.
Dunaway also contends that his death sentence should be overturned because, he says, the trial court erred in allowing Lois Russaw, Felicia Russaw, and Teresa Russaw to testify for the State during the sentencing phase of the trial. According to Dunaway, the only testimony those three witnesses offered was hearsay concerning something Tressa Patterson had purportedly stated in the weeks before she was killed (i.e., that Dunaway had threatened to kill both Tressa Patterson and James Patterson). Dunaway argues that allowing hearsay testimony during the sentencing phase was reversible error because Ala.Code 1975, § 13A-5-45(d), allows the use of hearsay evidence only if "the defendant is accorded a fair opportunity to rebut [it]." Dunaway argues that he was denied this opportunity because the testimony concerned the purported statements of a deceased woman. Relying on the Confrontation Clause of the Sixth Amendment to the United States Constitution, Dunaway further argues that the only hearsay statements that may be admitted against a defendant are those found to exhibit trustworthiness and reliability; he argues that the State presented no evidence to show that the statements, which Tressa Patterson purportedly made to the three witnesses, were trustworthy; and he argues that while the capital-punishment statute (specifically § 13A-5-45(d)) contemplates the admission of hearsay, the reliability and trustworthiness of the hearsay must be proved before it is admitted.
Dunaway argues that the introduction of the Russaws' testimony had a devastating effect on the jury because, he says, their testimony was in essence a voice from the grave tending to negate his claim that he had suddenly lost control and committed the murders while under the influence of extreme mental or emotional disturbance. The State contends, on the other hand, that it had the right to use the testimony of Lois Russaw, Felicia Russaw, and Teresa Russaw during the sentencing phase to illustrate Tressa Patterson's state of mind near the time of her death (i.e., to show that Dunaway had threatened Tressa Patterson and James Patterson and that she feared for their lives). The State contends that the testimony was introduced for the purpose of establishing the aggravating circumstance set out in Ala.Code 1975, § 13A-5-49(8) (that "[t]he capital offense was especially heinous, atrocious or cruel compared to other capital offenses"). The State argues, however, that the Russaws' testimony was relevant only with respect to the sentencing of Dunaway for the murder of Tressa Patterson and that it was unsuccessfully introduced for the purpose of obtaining for Dunaway a death sentence for that murder. According to the State, the Russaws' testimony could not have prejudiced Dunaway with respect to his *1047 sentence for the murder of James Patterson.
We note that Dunaway objected to the testimony of Lois Russaw:
"Q: Now, my other question to you [Lois Russaw] is was there something that was said to you that was a communication from her [Tressa Patterson] to you?
"A: She told me that
"Mr. McKinnon [one of Dunaway's attorneys]: (Interposing) We would object on the basis of hearsay, Your Honor.
"Mr. Whigham [prosecutor]: Judge, our contention is that hearsay is admissible.
"THE COURT: It is my understanding at this stage hearsay is admissible. There [are] some constitutional rights that can't be violated by the presentation of evidence, but I believe there is no violation or no problem with admitting hearsay on this. So, I'll overrule the objection and allow her to answer the question.
"Mr. McKinnon: Your Honor, I would like to [cite Charles W. Gamble, McElroy's Alabama Evidence] on that particular subject.
"THE COURT: Put it on the record. I don't know what that says.
"Mr. Whigham: Judge, if they have some law I certainly don't mind letting you read it.
"THE COURT: I would like to read it. I haven't memorized every one of those rules.
"Mr. Whigham: Judge, what the State is citing 13A-5-45, sectionsub (d) [sic].
"Mr. McKinnon: Okay.
"THE COURT: That is where it saysI don't know there is any violation of the Constitution of the State of Alabama. It [§ 13A-5-45(d)] says, `... provided [that] the defendant is accorded [a fair] opportunity to rebut any hearsay statement[s].' I think it is anticipated that hearsay would be admissible. You can put your objection on the record.
"Mr. McKinnon: Okay. Well, you have got it on the record that we object based on the violation of the hearsay rule.
"THE COURT: Go ahead and answer the question."
Thereafter, Lois Russaw and Felicia Russaw testified that Tressa Patterson had told them that Dunaway had threatened her and that she feared for her life. Teresa Russaw testified that Tressa Patterson had told her that Dunaway had threatened both her and James Patterson.
Our review of the record indicates that the Russaws' testimony did tend to negate the mitigating circumstance that Dunaway was attempting to provethat he never contemplated killing anyone. Therefore, because the testimony could have had an effect on the jury's recommendation of a sentence, we will address the question whether that testimony was admissible.
This Court, in Ex parte McGahee, 632 So.2d 981 (Ala.1993), addressed the admissibility and consideration of hearsay evidence at the penalty (sentencing) phase of a capital case:
"The trial court may properly consider hearsay at the penalty phase of the trial if the defendant has an opportunity to rebut the evidence.
"`Courts are permitted to consider hearsay testimony at sentencing.... While hearsay evidence may be considered in sentencing, due process requires both that the defendant be given an opportunity to refute it and that it bear minimal indicia of reliability....'"
632 So.2d at 982-83. Reliability can be established in either of two ways: 1) by demonstrating that the hearsay statement falls within a firmly rooted hearsay exception, or 2) by demonstrating that the statement is supported by a showing of particularized guarantees of trustworthiness. See Fortner v. State, 582 So.2d 581 (Ala. *1048 Crim.App.1990); see, also, Charles W. Gamble, McElroy's Alabama Evidence § 242.01(7) (5th ed.1996), and the cases cited therein.
Dunaway's argument that he had no opportunity to rebut the testimony the State's witnesses Lois Russaw, Felicia Russaw, and Teresa Russaw gave during the sentencing phase is not persuasive. The record indicates that he offered evidence to rebut testimony offered by the State through Lois Russaw during the guilt phase of the trial. That evidence was in the form of his own testimony contradicting Lois Russaw's testimonyDunaway's testimony during the guilt phase indicated that he had never threatened Tressa Patterson or James Patterson. Although he had a constitutional right not to do so, Dunaway, in an effort to rebut the testimony of the State's witnesses Lois Russaw, Felicia Russaw, and Teresa Russaw, could have testified during the sentencing phase, as he chose to do during the guilt phase. Therefore, Dunaway had an opportunity to rebut the Russaws' testimony.
Likewise, we are not persuaded by Dunaway's argument that the testimony of these three State's witnesses has no indicium of reliability. A statement of the declarant's then existing emotions or state of mind has historically been admissible as an exception to the hearsay evidence rule. See McElroy's Alabama Evidence, supra, § 261.03(2) and (5); Ex parte Whisenhant, 555 So.2d 235 (Ala.1989) (statement of fear, including statement as to the cause of the fear, held admissible); and Jackson v. State, 629 So.2d 748 (Ala.Crim.App.1993) (same). Because the witnesses' testimony concerned Tressa Patterson's statement that she was afraid of Dunaway and feared for her life, it fell within a hearsay exception that has been recognized by this Court. Likewise, we note that "[a] statement by the accused [like Dunaway's statements to Tressa], [made] before or after the time of the alleged criminal act, asserting a design or emotion in the accused which points to guilt is admissible against the accused as an admission." McElroy's Alabama Evidence, § 264.01(1)(a); and see the cases cited therein. We conclude that the testimony was sufficiently reliable to allow the trial court and the jury to consider it during the sentencing phase of the trial.
We have fully considered the opinion of the Court of Criminal Appeals and the merits of all the issues raised by Dunaway, and, as to the conviction and sentence for the death of James Patterson, we have carefully searched the record for any plain error; we have found no error in either the guilt phase of the trial or the sentencing phase of the trial that adversely affected Dunaway's rights. As to the sentence imposed for the murder of James Patterson, we conclude that the trial court's findings concerning the aggravating and mitigating circumstances were supported by the evidence and that the death sentence was proper under the circumstances. Ala. Code 1975, § 13A-5-53(a) and (b). The judgment of the Court of Criminal Appeals is affirmed as to both convictions and sentences.
AFFIRMED.
HOOPER, C.J., and MADDOX and COOK, JJ., concur.
SEE and LYONS, JJ., concur in the judgment and concur in part and dissent in part as to the rationale.
JOHNSTONE, J., concurs in part, concurs in the result in part, and dissents in part.
BROWN, J., recuses herself.
LYONS, Justice (concurring in the judgment and concurring in part and dissenting in part as to the rationale).
I concur in all parts of the main opinion except its holding that the trial court did not err when it allowed the Russaws to testify during the sentencing hearing as to *1049 threats allegedly made by Dunaway to Tressa Patterson. As the main opinion points out, hearsay testimony is admissible at sentencing. See Ex parte McGahee, 632 So.2d 981, 982-83 (Ala.1993). However, "`due process requires both that the defendant be given an opportunity to refute [the hearsay testimony] and that it bear minimal indicia of reliability.'" Id. at 983 (quoting Kuenzel v. State, 577 So.2d 474, 528 (Ala.Crim.App.1990)). Reliability can be established by showing (1) that the hearsay testimony "falls within a firmly rooted hearsay exception" or (2) that the statement is supported by "a showing of particularized guarantees of trustworthiness." Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).
The main opinion justifies the admission of the Russaws' testimony during the sentencing phase by stating that the Russaws merely testified as to an admission by Dunaway. In so doing, the main opinion points to Charles W. Gamble, McElroy's Alabama Evidence § 264.01(1)(b) (5th ed.1996), and the cases cited therein. Section 264.01(1)(a) (note 1) says that such statements fall within Rule 801(d)(2)(A), Ala. R. Evid., which states that a "party opponent's" own statement is not hearsay. The main opinion also holds that these statements were admissible as "statement[s] of the declarant's then existing emotions or state of mind," citing McElroy's Alabama Evidence, supra, § 261.03(2) and (5). 746 So.2d at 1048. Those subsections refer to Rule 803(3), Ala. R. Evid., under which "[a] statement of the declarant's then existing state of mind" is admissible. Thus, the main opinion concludes that the Russaws' testimony "fell within a hearsay exception that has been recognized by this Court, 746 So.2d at 1048, and that its admission did not violate Dunaway's right to due process.
I agree that the Russaws' testimony regarding the threats would be admissible under this rule if the Russaws testified that they had personally heard Dunaway make them. However, the Russaws did not hear Dunaway make them. Instead, they testified that Tressa Patterson told them that Dunaway had threatened her. This is hearsay within hearsay.
Although the Alabama Rules of Evidence do not apply to sentencing proceedings, Rule 1101(b)(3), Ala. R. Evid., if we are to find that the Russaws' testimony bore "minimal indicia of reliability" because it fell "within a firmly rooted hearsay exception," then we must look to the Rules of Evidence when deciding whether the hearsay testimony is admissible pursuant to an exception to the hearsay rule. Tressa Patterson's statements are not admissions by a party opponent but statements by a victim and therefore do not fall within Rule 801(d)(2)(A).[2] Moreover, the statements do not fall within Rule 803(3) because they were statements of memory made to prove the fact remembered. See United States v. Cohen, 631 F.2d 1223, 1225 (5th Cir.1980) ("But the state-of-mind exception does not permit the witness to relate any of the declarant's statements as to why he held a particular state of mind.... If the reservation in the text of the rule is to have any effect, it must be understood to narrowly limit those admissible statements to declarations of condition `I'm scared'and not belief`I'm scared because [the defendant] threatened me.'"); cf. United States v. Joe, 8 F.3d 1488, 1492 (10th Cir.1993) (holding that physician's testimony regarding patient's statement that she was afraid because she thought her husband might kill her was a statement of memory or belief, and thus was inadmissible under Rule 803(3), Fed. R.Evid.). Furthermore, the State offered no evidence at the sentencing phase of the trial suggesting that the statements bore some other particularized guarantees of trustworthiness. Thus, I would hold that the admission of this testimony was error because the Russaws' hearsay testimony *1050 did not bear the required "minimal indicia of reliability."[3]
The State, however, argues that if there was error in this regard, it was harmless. The standard for determining whether constitutional error is harmless is whether the court can "declare a belief that it was harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In determining whether constitutional hearsay error is harmless, a court may consider numerous factors, including
"`the importance of the [declarant's] testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the [declarant] on material points, ... and the overall strength of the prosecution's case.' Delaware v. Van Arsdall, 475 U.S. [673], 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 [(1986)]."
James v. State, 723 So.2d 776, 781 (Ala. Crim.App.), cert. denied, 723 So.2d 786 (Ala.1998).
At the sentencing phase, Dunaway maintained that the central issue was whether the murders were premeditated. Dunaway claimed that they were not and that he had committed them while under extreme emotional disturbance. He also claimed that he did not intend to kill James and testified that he set the fire, panicked, forgot James, and ran away from the house. Based on these facts, Dunaway argues that the error was not harmless. However, because the State presented ample admissible evidence indicating that Dunaway intended to kill Tressa and James Patterson and because the State presented other evidence indicating that this capital murder was especially heinous, atrocious, or cruel, I would hold that the error in admitting the testimony was harmless.
During the sentencing phase, the State presented testimony from the Russaws indicating that on two occasions they had personally heard Dunaway threaten to kill Tressa. A finding that this testimony was reliable can be justified by its admissibility under Rule 801(d)(2)(A), Ala. R. Evid., because it was evidence of a statement by a party opponent. The State also presented evidence of James Patterson's suffering during the fire and evidence that Dunaway intentionally killed James Patterson, e.g., evidence that Dunaway intentionally left James Patterson in the burning trailer to die. In its order finding that the murder of James Patterson was especially heinous, atrocious, or cruel when compared to other capital murders, the trial court summarized this evidence:
"[A] 22-month-old child was left in a burning mobile home, the fire having been set by the defendant with the knowledge that the child was inside, helpless to defend himself or protect himself, or too immature to know the existence of any danger or threat to life, who either inhaled products of combustion causing death, or burned to death from the flames, to the extent that he resembled a dog, according to the testimony of one witness."
The helplessness of a victim and the total indifference of a defendant can be factors upon which a finding that a capital murder was especially heinous, atrocious, or cruel can be based. See Rieber v. State, 663 So.2d 985, 992-93 (Ala.Crim.App.1994), aff'd, 663 So.2d 999 (Ala.), cert. denied, 516 U.S. 995, 116 S.Ct. 531, 133 L.Ed.2d 437 (1995).
Accordingly, I concur only in the result as to the main opinion's treatment of the Russaws' hearsay-within-hearsay testimony. *1051 I would hold that it was error to consider this testimony reliable by reason of its compatibility with the Alabama Rules of Evidence, but that the error was harmless. I agree that the judgment of the Court of Criminal Appeals is due to be affirmed.
SEE, J., concurs.
JOHNSTONE, Justice (concurring in part, concurring in the result in part, and dissenting in part).
I respectfully dissent from one holding and concur in the result on a second. I will briefly discuss each. I concur in all the other holdings in the main opinion.
First, I respectfully dissent from the holding of the Court of Criminal Appeals, affirmed by the majority of this Court, that the trial court did not commit error in refusing the defendant's requested jury instruction on the lesser included offense of felony (arson)-murder in the death of James Patterson. The test for a defendant's entitlement to an instruction submitting a lesser included offense to the jury is stated in Boyd v. State, 699 So.2d 967, 972 (Ala.Crim.App.1997):
"`A defendant accused of a greater offense is entitled to have the trial court charge on any lesser included offense if there is any reasonable theory from the evidence to support the lesser charge, regardless of whether the state or the defendant offers the evidence. Ex parte Pruitt, 457 So.2d 456 (Ala.1984); Parker v. State, 581 So.2d 1211 (Ala.Cr.App. 1990), cert. denied, 581 So.2d 1216 (Ala. 1991). A court may properly refuse to charge on a lesser included offense ... when ... it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense.... Anderson v. State, 507 So.2d 580 (Ala.Cr.App. 1987)....'"
(Quoting Breckenridge v. State, 628 So.2d 1012, 1016 (Ala.Crim.App.1993)). Section 13A-6-2(a)(3), Ala.Code 1975, provides in pertinent part that a person commits the crime of felony (arson)-murder if "[h]e commits ... arson in the first degree, ... and, in the course of and in furtherance of the crime ..., he ... causes the death of any person." The defendant testified that he panicked, forgot about James, and ran away from the house he had set on fire. James died in the fire. Thus, neither the trial court nor the Court of Criminal Appeals nor this Court can accurately say there is "no evidence tending to bring the offense within the definition of the lesser [included] offense." Therefore, the defendant was entitled to a jury instruction submitting felony (arson)-murder for consideration by the jury, even though the defendant's evidence supporting this theory may have been "weak, insufficient, or doubtful in credibility." See Chavers v. State, 361 So.2d 1106, 1107 (Ala.1978). See also Deming v. City of Mobile, 677 So.2d 1233, 1235 (Ala.Crim.App.1995). The refusal of the trial court to submit the lesser included offense of felony (arson)-murder to the jury for its consideration regarding the killing of James was prejudicial error affecting that one conviction.
I concur only in the result on the issue of the admissibility of the Russaw witnesses' testimony regarding threats made or reportedly made by the defendant to the victim Tressa Patterson. The witness Lois Russaw, who testified to the most damning threat, was testifying to her own personal observations of the defendant's conduct as he menaced her and Tressa with a gun and made the threats to Tressa. This testimony was not hearsay at all. Rule 801(d)(2)(A), Ala. R. Evid. After the defendant interposed his objection to Lois Russaw's testimony and the trial judge overruled it, Lois did not, as a factual matter, relate any more threats. Thereafter, the defendant did not object to the testimony of the witnesses Felicia and Teresa Russaw regarding threats they said the victim Tressa said the defendant had made. The particular substance of the testimony of Felicia and Teresa was not so prejudicial as to make its admission *1052 plain error,[4] even though those aspects of the testimony relating what the victim Tressa said the defendant said or otherwise did, as distinguished from what the victim Tressa said she herself felt, did not meet any of the tests for reliability that would except the testimony from the prohibitions of the hearsay rule.
NOTES
[1] In Batson, the United States Supreme Court held that the prosecution may not use its peremptory strikes to remove venirepersons of the defendant's race solely on the assumption that they would be biased toward the defendant merely because he is of the same race. Batson granted a defendant the right to require the prosecution to explain the reasons for its strikes if the defendant establishes a prima facie case of discrimination.
[2] Justice Johnstone also makes this point in his special writing.
[3] The cases relied on by the main opinion to establish the reliability of the Russaws' testimony on the basis of an exception to the hearsay rule, Ex parte Whisenhant, 555 So.2d 235 (Ala.1989), cert. denied, 496 U.S. 943, 110 S.Ct. 3230, 110 L.Ed.2d 676 (1990), and Jackson v. State, 629 So.2d 748 (Ala.Crim.App. 1993), predate the adoption of the Alabama Rules of Evidence and are inconsistent with those rules.
[4] The absence of an objection weighs against a claim of prejudice under the plain-error rule. Ex parte Boyd, 715 So.2d 852 (Ala. 1998).